**BROWNE WOODS GEORGE LLP**
Eric M. George (SBN 166403)
egeorge@bwgfirm.com
Allan Browne (SBN 34923)
abrowne@bwgfrim.com
Michael A. Bowse (SBN 189659)
Mbowse@bwgfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067
Phone: (310) 274-7100

**WILLIAMS CUKER & BEREZOFSKY**
Mark R. Cuker (*Admitted Pro Hac Vice*)
mcuker@wcblegal.com
Michael J. Quirk (*Admitted Pro Hac Vice*)
Mquirk@wcblegal.com
1617 J.F.K. Boulevard, Suite 800
Philadelphia, PA 19103-1819
Phone: (215) 557-0099
Fax:     (215) 557-0673

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck (SBN 152054)
bsk@kbklawyers.com
Richard L. Kellner - (SBN 171416)
rlk@kbklawyers.com
Engine Company No. 28 Building
644 South Figueroa Street
Los Angeles, CA 90017
Phone: (213) 217-5000
Fax:     (213) 217-5010

**ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Phone: (818) 961-2000
Fax:     (818) 936-0232

[*Additional counsel listed on signature page*]
Attorneys for Plaintiffs and others Similarly Situated.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH A. MONACO, ANITA M. MONACO, and JAMES BRANDT, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION<br><br>　　　　　　　Defendant. | CASE NO. 2:09-cv-05438-SJO (CTx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1)　**Fraudulent Omissions;**<br><br>(2)　**Violation of Bus. & Prof. Code §17200,** *et seq.* **– "Unlawful," "Unfair" and "Fraudulent" Business Practices;**<br><br>(3)　**Breach of Contract; and**<br><br>(4)　**Tortious Breach of the Covenant of Good Faith and Fair Dealing.**<br><br>**JURY TRIAL DEMANDED** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

# INTRODUCTION

1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§1601, *et seq.,* California's Unfair Competition Law (the "UCL"), Bus. & Prof. Code §§ 17200, *et seq.,* and other statutory and common law.  Plaintiffs, individually, and on behalf of all others similarly situated ("Class Members") bring this action against BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION; based upon Defendant's failure to clearly, unambiguously and conspicuously disclose to Plaintiffs and the Class Members, in Defendant's Option Adjustable Rate Mortgage ("Option ARM") loan documents, and in the accompanying required disclosure statements:  (i) the actual interest rate on the Notes (12 C.F.R. § 226.17);  (ii) that the initial interest rate disclosed in the Notes would last only one month, was discounted, and was substantially lower than the actual interest that Plaintiffs and Class Members would be actually charged on the Notes; (iii) that the amount of monthly payments provided for in the Notes and for the first 3-5 years in the Truth in Lending Disclosure Statement ("TILDS") was based entirely on the "teaser" rate; and (iv) the amount of the monthly payments after one month would not be sufficient to even pay the interest being charged, let alone amortize the loan, so that each month the principal balance would increase even if the payments were made as scheduled (12 C.F.R. § 226.19).  (Hereinafter, (i) through (iv) shall be referred to as "The Material Omissions").

2.    On August 28, 2007, Plaintiffs filed their original complaint, *Monaco, et al. v. Bear Stearns, et al.,* No 2:07-cv-05607-SJO-CT (C.D. Cal.) ("Monaco I").  Pursuant to a stipulation and tolling agreement, on February 5, 2009, the Honorable James S. Otero granted the dismissal, without prejudice, which tolled, for purposes of the statute of limitations, any claims asserted by Plaintiffs, or that could have been asserted by Plaintiffs, from August 28, 2007 through July 29, 2009. *See* Monaco I, Dkt. No. 70.

# II.

# THE PARTIES

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

3.    Plaintiffs JOSEPH A. MONACO and ANITA M. MONACO are, and at all times relevant to this Complaint were, individuals residing in Palmdale, California.  On or about April 10, 2006, Mr. and Mrs. Monaco refinanced their existing home loan and entered into an Option ARM loan agreement with BSRMC.  The Option ARM loan was secured by Mr. and Mrs. Monaco' residence.  Attached hereto as <u>Exhibit 1</u> are true and correct copies of the Note, Truth and Lending Disclosure Statement ("TILDS"), and Program Disclosure (collectively the "Loan Documents"), pertinent to this action.

4.    Plaintiff JAMES BRANDT is, and at all times relevant to this Complaint was, an individual residing in Santa Clarita, California.  On or about April 24, 2007, Mr. Brandt refinanced his existing home loan and entered into an Option ARM loan agreement with BSRMC.  The Option ARM loan was secured by Mr. Brandt's primary residence. Attached hereto as <u>Exhibit 2</u> are true and correct copies of the Loan Documents pertinent to this action.

5.    Defendant  BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION ("BSRMC") is, and at all relevant times was, qualified to do business in California, and doing business in this judicial district.  BSRMC is a corporate affiliate of EMC Mortgage Corporation, both of which were, at all times material hereto, wholly owned subsidiaries of The Bear Stearns Corporation ("BEAR STEARNS").  Defendant BSRMC is a California corporation licensed to do business and doing business in California.  At all relevant times hereto BSRMC was and is engaged in the business of originating, distributing and selling the Option ARM loans that are the subject of this Complaint. BSRMC transacts business in Los Angeles County, California and at all relevant times originated, distributed, and sold Option ARM loans throughout the United States, including Los Angeles County, California.  BSRMC has significant contacts with Los Angeles County, California, and the activities complained of herein occurred, in whole or in part, in this District.

6.    On April 10, 2006, BSRMC sold and/or assigned Plaintiffs Mr. and Mrs. Monaco's Option ARM loan that is the subject of this action, together with all rights and

liabilities associated therewith, to EMC MORTGAGE. On April 24, 2007, BSRMC sold and/or assigned Plaintiffs Mr. Brandt's Option ARM loan that is the subject of this action, together with all rights and liabilities associated therewith, to EMC MORTGAGE.

## THE BEAR STEARNS SECURITIZATION MACHINE

7.     At all times mentioned herein, Defendant BSRMC and its affiliates were engaged in the business of originating, selling, securitizing, servicing, and/or owning, and/or are or were the assignees of, the Option ARM loans that are the subject of this Complaint, throughout the United States, including in Los Angeles County, California.

8.     At the time the Transactions at issue in this litigation were consummated, BEAR STEARNS had long been a leader in all facets of mortgage-loan securitization, at or near the top of the charts for issuance and underwriting of mortgage-backed securities for 17 years running.[1] Through its network of affiliates, BEAR STEARNS controlled every step in the mortgage-loan-securitization chain: from the origination and servicing of loans that provided the cash flow for the mortgage-backed securities; to the "warehouse" or temporary financing of large pools of "whole loans" pending their pooling and securitization into mortgage backed securities; to the underwriting and distribution of the mortgage-backed securities that provided permanent financing to EMC with respect to the mortgage loans; to the management of hedge funds that it caused to buy the mortgage-backed securities.

9.     EMC played a crucial role within the BEAR STEARNS securitization machine. According to SEC filings, BEAR STEARNS established EMC in 1990 as its mortgage-backing arm to facilitate the purchase and servicing of mortgage loans as a complement to

---

[1]  *See, e.g.*, Asset-Backed Alert, Dec. 31, 2006, *available at:* http://www.abalert.com/Public/MarketPlace/Ranking/index.cfm?files=disp&article_id=1 044674725 (ranking Bear Stearns as the fifth-largest issuer of mortgage-backed securities); Q4 2006 Bear Stearns Earnings Conference Call, Dec. 14, 2006 (stating that, for 2006, "Bear Stearns ranked as the number one underwriter of MBS Securities [mortgage-backed securities] as the Company's securitization volume rose to $113 billion from $95 billion in fiscal 2005, capturing 11% of the overall U.S. mortgage securities market").

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

BEAR STEARNS' own loan originations. Since its inception, EMC has contributed greatly to Bear Stearns' rise to the very top of the mortgage-finance industry by purchasing over $200 billion in residential whole loans and servicing rights. BEAR STEARNS, through EMC and other subsidiaries, thus acted both as "originator" and an "aggregator" of an enormous volume of residential mortgage loans, with the ultimate strategy of securitizing them into an array of Bear Stearns'[s] securitizations. EMC repeatedly executed on that strategy, in many cases retaining the rights to act as servicer of the mortgage loans that it securitized. In its role as aggregator, EMC prescribed loan origination standards and approved the underwriting guidelines of its vast network of loan originators, and whose loan origination activities it thus helped finance.

10.    BEAR STEARNS reported in 2006 that "Our vertically integrated franchise allows us to access every step of the mortgage process, including originating, securitization, distribution and servicing", and that it was first in the U.S. mortgage-backed security underwriting and securitization of adjustable rate mortgages.

11.    The product of this machine was a successful and extraordinarily profitable enterprise. Bear Stearns recorded gains and earned fees at every step in this chain: (i) loan-origination fees, (ii) servicing fees, (iii) gains on sale of the mortgages to the securitization trusts, (iv) fees from underwriting mortgage-backed securities, (v) gains and fees from CDOs into which these securities were repackaged, (vi) gains and fees from trading in these securities and interests in the CDOs into which they were placed, and (vii) management fees and carried interests from hedge funds and other investment vehicles that invested in the vast array of securities and financial products structured by Bear Stearns that ultimately were backed by residential mortgage loans.

12.    From 2003 to 2006, Bear Stearns' revenue and profit increased by 123.8% and 77.6%, respectively, driven in large part by mortgage finance and its securitization machine.[2] Consistently, the volume of EMC's securitizations grew markedly over the

---

[2]  Bear Stearns Companies Inc., Annual Report (Form 10-K), at 70 (Nov. 30, 2006); Bear Stearns Companies Inc., Annual Report (Form 10-K), at 77 (Nov. 30, 2005).

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1  same period.  According to SEC filings, in 2003, EMC securitized 86,000 loans valued at
2  approximately $20 billion.  That number tripled in 2004 to 230,000 loans, valued at $48
3  billion.  In 2005, the number jumped to 389,000 loans, valued at nearly $75 billion.  And
4  in 2006, EMC securitized over 345,000 loans valued at $69 billion.  All told, from 2003 to
5  2007, EMC purchased and securitized more than one-million mortgage loans originally
6  valued in excess of $212 billion.  For 2006, Bear Stearns' overall securitization volume
7  rose to $113 billion from $95 billion in fiscal 2005, amounting to 11% of the overall U.S.
8  mortgage-backed securities market.[3]

9      13.   The securitization process begins with Bear Stearns directing EMC to acquire
10 certain mortgages, which a Bear Stearns entity then purchases from EMC.  In the next
11 step, a Bear Stearns entity, in its role as Depositor, transfers the ownership of the bundle
12 of mortgages to a Trust.  This initial conveyance of the legal ownership of the subject
13 mortgages also includes the Notes underlying the mortgages, since it is the Note that
14 obligates the borrower to make payments, and also any Real Estate Owned ("REO")
15 properties, which are residential properties that have come to be owned by the mortgage
16 holder, usually through foreclosure.  The trustee of the Trust is typically a third party
17 financial institution such as Wells Fargo or J.P. Morgan.  In return, BEAR STEARNS
18 receives Certificates back from the Trustee, which BEAR STEARNS in turn sells to
19 investors, holds for its own benefit or passes back to EMC.  Taken as a whole, these
20 Certificates represent the entire beneficial ownership interest in the mortgage assets
21 contained in the Trust.  Individually, however, each certificate varies in the rights of
22 ownership and repayment granted to the holder.  Some certificates grant only the right to
23 receive certain income from the Trust while other certificates grant ownership in the
24 residual assets of the Trust.  The composition of the Certificates and the respective rights
25 granted to each Certificate are governed by a Pooling and Servicing Agreement.

26     14.   In most BEAR STEARNS offerings, EMC acts as Master Servicer or at least

27

28  [3]  Q4 2006 Bear Stearns Earnings Conference Call, Dec. 14, 2007.

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

provides the actual servicing of many of the securitized mortgage loans even when a
different entity is acting as Master Servicer.

15.  Critical to BEAR STEARNS' perpetuation of this successful enterprise was an
increasing supply of mortgage loans.  As investor demand for mortgage-backed securities
created and sold by BEAR STEARNS grew so did the need for ever-increasing numbers
of loans to securitize.  BEAR STEARNS founded BSRMC in 2005 to increase
originations of mortgages to feed its securitization machine.

16.  BEAR STEARNS frequently provided lenders warehouse lines of credit to
generate, to EMC's specifications, the ever-increasing volume of loans for EMC to
purchase and securitize.

17.  With a corporate objective of increasing origination and securitization volume,
BEAR STEARNS began to develop the Option ARM as a mass market product because it
offered the lowest monthly payment, albeit a deceptively low one because the payment did
not reflect the full amount of the interest being charged.

18.  BEAR STEARNS was quoted in a July 14, 2005 Reuters report as stating "no
other product can compete with the low monthly payment of an Option ARM." In
speaking about Option ARMs, Thomas F. Marano, global head of mortgage and asset
backed securities at BEAR STEARNS told Business Week "at a price, you can originate
or sell anything."  (9/11/2006)

19.  Even though OPTION ARM borrowers were not paying all the interest, BSRMC
were able to book the "deferred interest" as income, thereby fattening up their bottom
lines and bonus pools.

20.  In its 2008 Annual Report to its shareholders. JP MORGAN CHASE described
Option ARM loans as "possibly the worst mortgage product." JP MORGAN CHASE had
refrained from writing these loans because "we did not think they were a consumer
friendly product."

21.  Pursuant to California Civil Code § 1459 and California Code of Civil
Procedure § 368, Defendant BSRMC  is a subsequent purchaser and/or assignee of

1  Plaintiffs' and the Class Members' Option ARM loans.  At all times relevant, Defendant
2  are and/or were sophisticated and knowledgeable entities whose businesses included
3  designing, originating, purchasing, packaging, securitizing and selling interests in the
4  subject Option ARM loans.  The subject Option ARM loans at issue are non-negotiable
5  instruments within the meaning of Civil Code § 1459 and at all times relevant, Defendant
6  purchased, packaged, securitized and/or sold the subject Option ARM loans with full
7  knowledge of the failures to disclose and Material Omissions as alleged herein.
8  Defendant therefore "stands in the shoes" of the assignors and originators of those
9  mortgages, taking their rights and remedies, subject to any defenses that the obligor
10 (Plaintiffs and Class Members) has against the assignor prior to notice of the assignment.
11 15 U.S.C. § 1641 provides that assignees are liable for violations that are apparent on the
12 face of disclosure documents and other assigned loan documents.

## III.

## JURISDICTION AND VENUE

15  22.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1601 *et seq.*
16 and 28 U.S.C. §§ 1331 and 1367(a).

17  23.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. §
18 1332(d)(2), the "Class Action Fairness Act," as the amount in controversy exceeds
19 $5,000,000.00 and many Class Members are citizens of different states than BSRMC.

20  24.  This Court has personal jurisdiction over the parties in this action, because
21 BSRMC is a corporation or other business duly licensed to do business in California.

22  25.  Venue is proper within this District and Division pursuant to 28 U.S.C.
23 §1391(b), because a substantial part of the events and omissions giving rise to the claims
24 occurred in this District, and because there is personal jurisdiction in this District over the
25 named Defendant because they regularly conduct business in this judicial district.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

28  26.  BSRMC created, designed, purchased, sold, distributed, serviced, owned and/or

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1  are assignees of the Option ARM loans that are the subject of this Complaint.

2      27.    The Option ARM loans that are the subject of this Complaint are the loans

3  created, designed, originated and/or acquired and securitized by BSRMC with the

4  following common characteristics: (i) the Monthly Payment Amount stated in the Note is

5  based upon a low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment

6  schedule listed in the TILDS, for the first 3-5 years of the Note, is based upon a fully

7  amortizing payment at the "teaser" interest rate; (iii) the interest rate "adjusts" after only

8  one month to a rate which is the sum of the "index" and the "margin"; and (iv) after the

9  first 3-5 years, the amount of the monthly payments increases.

10     28.   BSRMC knew that for Plaintiffs' and Class Members' loans, the sum of the

11  index and the margin would necessarily result in an interest rate that always exceeded the

12  "teaser" rate by several percentage points.  As a result, after only one month, the interest

13  accruing on the note more than doubled from an amount which was usually below 2% to

14  an amount of at least 6%, and in some cases up to 8%.  Because of this dramatic interest

15  rate adjustment after only one month, the monthly payment, which was calculated based

16  on a fully amortizing payment at the low teaser rate, was no longer sufficient to even pay

17  the interest which accrued on the note, and the balance owed increases even if the

18  payments are made as scheduled on the Note and the TILDS.  This process is known as

19  negative amortization, and BSRMC knew it was *certain to occur* because of the large

20  spread between the teaser rate and the combined index and margin.  Indeed the margin

21  alone was consistently higher than the "teaser" rate.  Even if the index went down to zero

22  – which was impossible during the time frame when these loans were written – the

23  combined total of the margin and index would never be close to the "teaser" rate, and thus

24  the Option ARM loans at issue would always, and were designed to, cause negative

25  amortization.  In reality, the fully indexed rate was at least 7.5% for the named plaintiffs,

26  so that the amount needed to pay the "interest only" on the loan was almost double the

27  amount specified in the note, and the amount needed to actually pay the loan off over 30

28  years was even more than that BSRMC and its affiliates designed the loan program to

9

1  withhold this critical information from the borrowers until at least a month after the loan
2  closed, when the borrower would receive a bill which, for the first time, informed her of
3  the actual cost of the loan. By that time, the borrower was locked into the loan by a
4  prohibitive three year prepayment penalty. BSRMC never disclosed to Plaintiffs and
5  Class Members this material information before they entered into the loan. Plaintiffs
6  relied on the interest rate and monthly payments specified in the Note and TILDS to be
7  fully amortizing, and believed that making the payments specified in these loan documents
8  would reduce their loan balances, not increase them. Had Defendant disclosed this
9  material information, Plaintiffs and Class Members would not have purchased the subject
10  Option ARM loans.

11      29.  Because of the way Defendant structured the Option ARM loans at issue, it was
12  certain that, as the scheduled payments were made each month, each Class Member would
13  owe more money than he or she did at the start of the loan, and have less time to pay it
14  back. Indeed, every time Plaintiffs and Class Members made a payment in the amount
15  reflected in the TILDS, the principal balance on their loans increased. To make matters
16  worse, this "deferred interest" was added to the principal balance and, in turn accrued
17  more interest – in effect using compound interest to increase the balance owed by each
18  borrower.

19      30.  Although BSRMC knew that negative amortization was certain to occur, they
20  never disclosed this to Plaintiffs or Class Members, who refinanced their homes and
21  entered into these loans without ever receiving this material information. Had BSRMC
22  disclosed this material information, Plaintiffs and Class Members would not have
23  purchased the subject Option ARM loans.

24      31.  The two most important pieces of information in any mortgage loan are the
25  interest rate and the amount of the monthly payments. For the Defendant's Option ARM
26  loans, the disclosures of both pieces of this information were misleading and omitted
27  material facts. The Loan Documents disclosed a teaser interest rate, but they did not
28  disclose that this rate would sharply increase after only one month. The Loan Documents

disclosed a low monthly payment for the first 3-5 years of the loan, which was based on the teaser rate, but this did not reflect the actual amount of interest being charged or the amount Plaintiffs and Class Members actually owed each month.

32.  Plaintiffs and Class Members were not informed of the sharp increase in the interest rate, and the fact that their monthly payments were not enough to pay the interest accruing on the loan, until they had made multiple payments following the closing of the loan, at which time they would receive a statement showing that the principal balance had increased with each month that had passed since the loan closed, despite the fact that the borrower had made all payments as scheduled.  Had BSRMC disclosed this material information, Plaintiffs and Class Members would not have purchased the subject Option ARM loans.

33.  By the time this material information was disclosed to Plaintiffs and Class Members, they were "locked" into the loan by a draconian prepayment penalty consisting of a prepayment charge equal to the amount of interest that would accrue during a six-month period on the amount prepaid (if the prepayment amount was greater than 20% of the original principal amount stated in the Note), which is to be calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment for a prepayment occurring during the first two to three years of the loan.  This draconian provision was designed by BSRMC to deter and prevent anyone from refinancing the loan during the applicable time period.

34.  Before Plaintiffs and Class Members entered into the subject  Option ARM loans, BSRMC failed to disclose and concealed the amount by which the borrowers' loan balances would increase over the first two to five years of the loan, even though BSRMC and its affiliates had actually performed this calculation internally and thus knew the truth. This increase in the loan balance is material information to any consumer entering into these loans, because it effectively strips the homeowners of equity in their homes, and greatly impairs their ability to refinance these loans once they recast to substantially higher monthly payments.  Thus, the loans were structured so that once borrowers were

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1  given or discovered the material information, that their loans were negatively amortizing,
2  Plaintiffs and Class Members could only get out of the loans if they incurred a substantial
3  prepayment penalty, or waited two to three years, in which case they would have to
4  refinance a substantially larger principal amount.  Had BSRMC disclosed this material
5  information, Plaintiffs and Class Members would not have purchased the subject Option
6  ARM loans.

7      35.   Each subject Option ARM loan has so-called payment caps, which provide that,
8  even after the monthly payment increases, it will not increase by more than 7.5% per year.
9  These payment caps are, however, subject to an overall cap on principal of 115% of the
10 original loan amount.  Once the loan principal reaches this 115% cap, the 7.5% limitation
11 on payment increases no longer applies, and the payment generally will increase by more
12 than that amount.  This built-in "payment shock" is more than many Class Members can
13 afford and was substantially certain to put them at risk of losing their homes to
14 foreclosure.

15     36.   However, the most that Defendant's Loan Documents said about negative
16 amortization was that it "may" occur.  This was ambiguous, misleading and deceptive,
17 because it implies that negative amortization was subject to some future contingency, such
18 as an increase in the index on which the adjustable rate was purportedly based, when, in
19 fact, it was *guaranteed* to occur after only one month, even if the index stayed the same or
20 went down.

21     37.   The undisclosed fact that negative amortization is certain to occur on the subject
22 loans and information regarding the interest rate to be charged on the loan was
23 information that Plaintiffs and Class Members would have found material when deciding
24 whether to purchase the subject Option ARM loans.  Despite this, BSRMC never
25 disclosed to Plaintiffs and Class Members this material information.  Had BSRMC
26 disclosed this material information, Plaintiffs and Class Members would not have
27 purchased the subject Option ARM loans.

28     38.   The failure of BSRMC to disclose this material information in the Loan

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1  Documents violated TILA, state consumer protection statutes, and common law, as more

2  fully set forth below.

## V.

## CLASS ACTION ALLEGATIONS

39.  Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rule of Civil Procedure, Rules 23(a) and 23(b).  The Classes that Plaintiffs seek to represent are defined as follows:

(a)  **National TILA Class:**  All individuals in the United States of America who, from August 28, 2006 through the date notice is mailed to the Class, have or had an Option ARM Loan that was sold or owned by Defendant and which was secured by real property on their primary residence located within the United States.  The class is defined to include only these loans which had the following characteristics: (i) the Monthly Payment Amount stated in the Note is based upon the low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule in the TILDS, for the first year or more of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) the interest rate "adjusts" after only one month to a rate which is the sum of the "index" and the "margin"; and (iv) after the first three to five years of the loan, the Monthly Payment Amount increases to a fully amortizing payment based upon the remaining principal balance at that time.  Excluded from the California Class are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.  Excluded from the National Class are Defendant's employees, officers, directors, agents, representatives, and their family members.

(b)  **The California Category I Class:**  All individuals who, from August

13

28, 2003 through the date that notice is mailed to the Class, who have or had an Option ARM Loan that was sold or owned by Defendant and which was secured by real property located in the State of California, which loans had the following characteristics: (i) the Monthly Payment Amount stated in the Note is based upon the low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule in the TILDS, for the first year or more of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) the interest rate "adjusts" after only one month to a rate which is the sum of the "index" and the "margin"; and (iv) after the first three to five years of the loan, the Monthly Payment Amount increases to a fully amortizing payment based upon the remaining principal balance at that time. Excluded from the California Class are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

(c) **The California Category II Class:** All individuals who, from August 28, 2003 through the date that notice is mailed to the Class, who have or had an Option ARM Loan that was sold or owned by Defendant which was secured by real property located within the United States (excluding California) and was approved by Defendant within the State of California, which loans had the following characteristics: (i) the Monthly Payment Amount stated in the Note is based upon the low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule in the TILDS, for the first year or more of the Note, is based upon a fully amortizing payment at the "teaser" interest rate; (iii) the interest rate "adjusts" after only one month to a rate which is the sum of the "index" and the "margin"; and (iv) after the first three to five years of the loan, the Monthly Payment Amount increases to a fully

14

amortizing payment based upon the remaining principal balance at that time. Excluded from all classes and subclasses are Defendant's employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-Classes in response to facts learned through discovery or legal arguments advanced by BSRMC or otherwise

40. <u>Numerosity</u>: The Classes are so numerous that the individual joinder of all members thereof is impracticable under the circumstances of this case. While the exact number of class members is unknown at this time, Plaintiffs are informed and believe that each of the proposed Classes consists of hundreds or thousands of members.

41. <u>Commonality</u>: Common questions of law or fact are shared by Class Members. This action is suitable for class treatment, because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

(a)    Whether The Loan Documents violated TILA;

(b)    Whether The Loan Documents violated 12 C.F.R. § 226.17;

(c)    Whether The Loan Documents violated 12 C.F.R. § 226.19;

(d)    Whether BSRMC engaged in unfair and/or fraudulent business practices that were likely to deceive Plaintiffs and Class Members before and during the loan application process;

(e)    Whether BSRMC concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA, state consumer protection statutes, and/or the common law;

(f)    Whether BSRMC failed to disclose to Plaintiffs and Class Members, before they entered into the subject Option ARM loans, that negative amortization was certain to occur if the borrowers made the initial

15

1    minimum monthly payments;

2    (g)    Whether The Loan Documents are non-negotiable instruments;

3    (h)    Whether Defendant's failures to disclose material information, as

4    alleged herein, are apparent on the face of The Loan Documents;

5    (i)    Whether Plaintiffs and Class Members are entitled to damages;

6    (j)    Whether Plaintiffs and Class Members are entitled to punitive

7    damages; and

8    (k)    Whether Defendant's affirmative defenses, if any, raise common issues

9    of fact or law as to Plaintiffs and Class Members as a whole.

10    42.  Typicality:  Plaintiffs' claims are typical of the claims of absent Class Members.

11    Plaintiffs and the other Class Members were subjected to the same kind of unlawful

12    conduct and the claims of Plaintiffs and the other Class Members are based on the same

13    legal theories.

14    43.  Adequacy:  Plaintiffs are adequate representatives of the Classes, because their

15    interests do not conflict with the interests of the other members of the Classes Plaintiffs

16    seek to represent.  Plaintiffs have retained counsel competent and experienced in complex

17    class action litigation and Plaintiffs intend on prosecuting this action vigorously.  The

18    interests of Class Members will be fairly and adequately protected by Plaintiffs and their

19    counsel.

20    44.    Ascertainable Class:  The proposed Classes are ascertainable in that the

21    members can be identified and located using information contained in Defendant's

22    mortgage lending records.

23    45.  This case is brought and can be maintained as a class action under Rule 23(b)(1),

24    23(b)(2), and 23(b)(3):

25    (a)  Injunctive and/or Declaratory Relief to the Class is Appropriate:  BSRMC has

26    acted or refused to act on grounds generally applicable to each of the Classes,

27    thereby making final injunctive relief or corresponding declaratory relief with

28    respect to each class as a whole appropriate; and

16

(b) <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to all Class Members, including those identified above, predominate over questions affecting only individual Class Members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.  Moreover, absent class treatment of this controversy, the amount of individual Class Members' losses in comparison to the enormous cost of litigation makes it almost certain that few Class Members would ever be able to even seek, let alone obtain, redress for their injuries.

## VI.

## **FIRST CAUSE OF ACTION**

### **Fraudulent Omissions**

46.  BSRMC violated TILA through The Material Omissions by:  (1) failing to disclose that negative amortization was certain to occur; (2) establishing a payment schedule that was not based on the annual percentage rate (APR), but rather an interest rate that applied for at most only 30 days; (3) listing in the TILDS an APR having no relation to the monthly payment listed for the first two to five years; (4) failing to disclose that the initial interest rate listed in the Note was discounted; and (5) failing to disclose the certainty of negative amortization in The Loan Documents provided to Plaintiffs and Class Members before they entered into The Loan Documents.

47.  15 U.S.C. § 1641(a) provides for assignee liability for violations that are apparent on the face of the loan documents."  The violations of TILA and Regulation Z alleged in this Complaint are apparent on the face of the loan documents.

**A. Failure to Disclose That Negative Amortization Was Certain to Occur.**

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

48. 12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans, stating as follows:

> 226.19. Certain residential mortgage and variable-rate transactions. . . . (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . . (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

49. In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board ("FRB") made clear that when a loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, the disclosure requires a definitive statement about negative amortization:

> 12 CFR Part 226
> [Regulation Z; Docket No. R-0863]
> Monday, April 3, 1995
> AGENCY: Board of Governors of the Federal Reserve System.
> ACTION: Final rule; official staff interpretation.
> If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as **negative amortization will occur** and the principal balance **will increase**)... (Found at 12 C.F.R. Pt. 226, Supp. I, 19(b)(2)(vii)-2 (emphasis added).

50. At all times relevant, statutory and common law in effect make it unlawful for a lender, such as BSRMC, to fail to comply with the FRB's Official Staff Commentary as well as Regulation Z and TILA.

51. BSRMC was aware, or should have been aware, that this loan product had a variable rate with payment caps and that The Loan Documents were deficient because of The Material Omissions, defined above, including that negative amortization was a certainty. On information and belief, BSRMC was aware of the guaranteed negative amortization, because they accrued the negative amortization as income for accounting and/or tax purposes. BSRMC was also aware the negative amortization was certain to

occur, because, in computing the total finance charge payable over the full life of the loan for purposes of compiling the TILDS, they included the interest on "deferred interest" which would accrue because the scheduled payments were insufficient to pay all interest due on the loan.  The TILDS, however, did not disclose the fact that negative amortization was a certainty, or the amount of the total finance charge that resulted from this negative amortization.

52.  The only places in the Notes that even inferentially reference negative amortization suggest that negative amortization is only a mere possibility, rather than an absolute certainty.  For instance, the Notes, at ¶ 5(a) state that "*If* the Minimum Payment is not sufficient to cover the amount of the interest due then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect.  This practice is known as negative amortization." And, ¶ 5(c) which state "For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal," were half-truths, because the Note  did not state that the payment schedule provided would absolutely guarantee that negative amortization was going to occur on these loans.

53.  Had BSRMC disclosed to Plaintiffs and the Class members that negative amortization was certain to occur if the payment schedule in the TILDS was followed, Plaintiffs and the Class members would not have entered into the loans.

**B. Failure to Disclose the Interest Rate Underlying the Payment Schedule.**

54.  Additionally, 12 C.F.R. §§ 226.17 and 226.19 require the lender to make disclosures concerning the payments in a clear and conspicuous manner.  A misleading disclosure is as much a violation of TILA as a failure to disclose at all.

55.  The scheduled payment amounts and interest rate listed in the Note and TILDS for each of the subject loans are unclear, because the payment amounts for the first three to five years are not based on the APR listed in the TILDS, but, instead, are based upon a rate listed in the Note that BSRMC knew would exist for only thirty (30) days.  At all

19

1  times relevant, The Loan Documents failed to disclose that even if Plaintiffs and Class
2  Members made payments according to the payment schedule set forth in the TILDS,
3  negative amortization was an absolute certainty. Had BSRMC clearly and conspicuously
4  disclosed the payment amount sufficient to cover both principal and interest based upon
5  the index and margin that would be used to calculate the payments after the first month,
6  the payment amounts would have been approximately double the payment amounts listed.

7      56.  Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states: "This standard
8  requires that disclosures be in a reasonably understandable form. For example, while the
9  regulation requires no mathematical progression or format, the disclosures must be
10 presented in a way that does not obscure the relationship of the terms to each other…"

11     57.  At all times relevant, The Loan Documents of BSRMC violated 12 C.F.R. §
12 226.17(a)(1) in that the relationship between the payments, for up to the first five years of
13 the loans, bear no relationship to the APR listed in the TILDS. Therefore, the form of
14 disclosure used by BSRMC obscured the relationship between the interest rate listed in the
15 Notes and the APR listed in the TILDS and the monthly payments listed in the payment
16 schedule.

17 **C. Failure to Disclose That the Initial Interest Rate Was Discounted.**

18     58.  12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of
19 the legal obligation between the parties." Official Staff Commentary regarding 12 C.F.R.
20 § 226.17(c)(1) requires that "[t]he disclosures shall reflect the credit terms to which the
21 parties are legally bound as of the outset of the transaction. In the case of disclosures
22 required under  § 226.20(c), the disclosures shall reflect the credit terms to which the
23 parties are legally bound when the disclosures are provided." The Official Staff
24 Commentary further states that "[t]he legal obligation normally is presumed to be
25 contained in the note or contract that evidences the agreement." Official Staff
26 Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment
27 cap that would prevent the initial rate or payment, at the time of the first adjustment, from
28 changing to the rate determined by the index or formula at consummation, the effect of

1  that rate or payment cap should be reflected in the disclosures."

2       59.  At all times relevant during the liability period, The Loan Documents violated

3  12 C.F.R. § 226.17(c) in that the Notes and TILDS did not disclose that the liability that

4  Plaintiffs and Class Members were incurring was substantially greater than the amount of

5  their scheduled payments.  Further, BSRMC failed to disclose to Plaintiffs and Class

6  Members that the initial interest rate was discounted, and that it was absolutely certain to

7  substantially increase after only one month, even when the index did not rise.  To the

8  extent that BSRMC  provided any disclosure that stated that the initial payment was not

9  based on the index, they failed to do so in a manner that was clear and conspicuous, and

10 that did not obscure its importance, or that was designed to be reasonably understood by

11 the ordinary consumer.  Rather than disclose that the interest rate would increase after

12 only one month, The Loan Documents stated that the initial payment was based on a

13 "yearly rate" of 1-3%.  The Loan Documents did not clearly and unambiguously disclose

14 that this initial rate was discounted, and would only last for one month.

15 **D. Failure to Clearly and Conspicuously Disclose the Actual Interest Rate.**

16      60.  BSRMC also failed to disclose to Plaintiffs and Class Members before they

17 entered into the subject Option ARM loans all of the ways by which the interest rate

18 applicable to the subject loans could increase, in violation of TILA.

19      61.  The foregoing violated 15 U.S.C. § 1638(a)(4), which requires lenders to

20 disclose only one annual percentage rate ("APR") and not an additional APR that is only

21 applicable for the first 30 days of a loan.

22      62.  It also violates the FRB's Commentary to 12 C.F.R. § 226.(17)(C)-6 requires

23 that the APR must "reflect a composite annual percentage rate based on the initial rate for

24 as long as it is charged and, for the remainder of the term, the rate that would have been

25 applied using the index or formula at the time of consummation."

26      63.  It violates 15 U.S.C. § 1638(a)(8) and 12 C.F.R. § 226.18(e), which requires

27 lenders to provide a descriptive explanation of the APR, which is defined as the cost of

28 credit expressed as a yearly rate.

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

64.   It violates 12 C.F.R. § 226.17 (and the commentary thereto) and 12 C.F.R. § 226.19, which, together, require lenders to make disclosures concerning the APR in a clear and conspicuous manner; under TILA, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.

65.   At all times relevant during the liability period, BSRMC provided Plaintiffs and Class Members with Notes that state: "I will pay interest at a yearly rate of [1.000% - 3.000%]." However, in the TILDS, the box entitled "ANNUAL PERCENTAGE RATE" describes the APR as "[t]he cost of your credit as a yearly rate" and then lists a much higher APR than the rate listed in the Notes.  For instance, in the case of Plaintiffs Mr. and Mrs. Monaco, it listed an APR of "7.527%" and for Plaintiff Mr. Brandt, it listed an APR of "8.871%."

66.   Thus, the listed rate in the Notes actually conflicted with the APR stated in the TILDS.  For instance, in the case of Plaintiffs Mr. and Mrs. Monaco, the "1.000%" stated in the Note contradicts the "7.527%" APR that BSRMC stated in the TILDS.  And for Plaintiff Mr. Brandt, the "1.000%" stated in the Note contradicts the "8.871%" APR that BSRMC stated in the TILDS.

67.   At all times relevant during the liability period, BSRMC failed to clearly and conspicuously explain in the Note or TILDS that the low rate (the same rate upon which BSRMC based the written payment schedules provided to Plaintiffs and Class Members) was offered only for the first thirty (30) days of the loan.

68.   BSRMC also failed to disclose to Plaintiffs and Class Members that the APR listed in the TILDS was not the APR or rate used to determine the first two to five years of payments listed in the very same TILDS, and that the listed payment amounts for the first two to five years of the loan were based on the interest rate stated in the Note, an interest rate which was correct for no more than thirty days.

69.   The FRB's commentary to 12 C.F.R. § 226.17(C)-6 requires that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the

index or formula at the time of consummation." Additionally,

> in a variable-rate transaction with a...discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.

70. The reason for this requirement is clear. Consumers cannot make an informed decision when they cannot compare the cost of credit to other proposals. It therefore was incumbent upon BSRMC to disclose to Plaintiffs and the Class members *before* they entered into the subject Option ARM loans the composite interest rate, and the amount of payments based thereon, so that these borrowers could understand exactly what they would be paying for the loan.

71. As alleged above, under TILA, BSRMC had a duty to clearly and conspicuously disclose to Plaintiffs and each Class Member before they entered into the subject Option ARM loans: (i) the payment schedule for the first three to five years was not based upon the APR listed on the TILDS, (ii) that negative amortization would occur and that the "principal balance will increase"; (iii) that the initial interest rate on the note was discounted; and (iv) the applicable annual percentage rate ("APR").

72. Under common law, BSRMC further had a duty to disclose to Plaintiffs, and Class Members that: (i) the promised low interest rate was only available for thirty days if at all; (ii) the payment rate for the first three to five years provided to Plaintiffs and Class Members on the TILDS was insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by BSRMC; and that (iv) loss of equity and/or loss of Plaintiffs' and Class Members' residences was certain to occur if Plaintiffs and Class Members made payments according to the payment schedule provided by BSRMC.

73. BSRMC is liable under this Cause of Action because it was the originator of Plaintiffs' loans and provided the deficient loan documents and disclosures to Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

and Class Members while concealing and omitting material information as alleged herein, with the intent to defraud borrowers who entered into the loans into believing that if the borrowers made the minimum payments stated in the TILDS, that the borrowers principal loan balance would *not* increase.

74. Each of the Notes at issue states: "I will pay ***principal and interest*** by making a payment every month." (Emphasis added.)  The Note then states, while referencing the Payment Cap provision, that "[t]his Payment Cap applies only to the ***Principal and Interest*** payment ..."  And, under the heading "BORROWERS FAILURE TO PAY AS REQUIRED," the Note states "[t]he amount of the charge will be 5.000% of my overdue payment of ***Principal and Interest***." (Emphasis added.)   These partial representations failed to disclose that the payment amounts prescribed in The Loan Documents were certain to result in negative amortization.

75. The Notes further state: "***If*** the Minimum Payment is not sufficient" then negative amortization may occur." (Emphasis added.)  However, The Loan Documents fail to disclose the material fact that the amount set forth in the payment schedules provided by BSRMC in the TILDS could not possibly cover the amount of interest due under *any* conceivable index rate plus the margin after the first 30 days.  To be accurate and complete, the Notes should have disclosed that if the borrowers followed the payment schedules set forth by BSRMC, the Monthly Payments *would not* cover the amount of interest due and negative amortization *would in fact* occur.

76. The Notes further state, under "Additional Payment Options" that the "Lender may provide me with up to three (3) additional payment options ...."  However, the so-called "Payment Options" that the lender "may provide" were not disclosed to Plaintiffs and Class members *before* they entered into the subject Option ARM loans; rather, it was only after Plaintiffs and Class Members entered into the loans that they were provided crucial material information about the true cost of their loans, and by then, it was too late as the borrowers were already hooked into the loans, with their accompanying heavy prepayment penalties.

77.   The Notes list an interest rate and a payment amount based on that initial interest rate. However, the TILDS that BSRMC gave to Plaintiffs and Class Members before they entered into the subject loans included a schedule of payments (including that initial payment rate) but disclosed a different, much higher interest rate. By stating the low teaser rate and associated monthly payment in the Note, and stating the much higher interest rate in the TILDS accompanied by a payment schedule based on the low teaser rate, BSRMC failed to disclose the actual interest costs that borrowers were going to accrue on their loans.

78.   The Notes further state, under "Amount of My Initial Monthly Payments" "Each of my initial monthly payments until the first Payment Change Date will be ...." and then it states "This amount *may* change...." (Emphasis added).  However, under the terms of the subject Option ARM loan, Plaintiffs' and Class Member's loan "payment" was *absolutely guaranteed to go up the very next month*.   In particular, Defendant's Loan Documents failed to disclose and omitted the material fact that while the initial monthly payment amount would remain constant, the actual amount to pay for the loan was absolutely guaranteed to go up.

79.   Defendant purposefully and intentionally devised this Option ARM loan scheme of stating only partially true facts and omitting important material information in order to deceive consumers into believing that these loans would provide a low-interest rate loan for the first two (2) to five (5) years of the Note and that if they made their payments according to the payment schedule provided by Defendant their payments would be sufficient to pay both principal and interest.

80.   Defendant BSRMC knew, but intended not to clearly disclose, that these listed low payments in the TILDS were predicated on an interest rate which would not, in fact, exist after the first thirty days, that negative amortization was *guaranteed* if borrowers made these listed low payments in the Note and TILDS; that the listed payments set forth in the TILDS were calculated such that, if the payments were made, borrowers actually would be paying off 115% of the original principal balance, This information was material

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1  to any reasonable borrower, and the omission of such material information would cause a
2  reasonable borrower to believe that the fully amortizing payments shown on the TILDS
3  were in fact those payments necessary to pay off the balance of the original amount
4  financed (i.e., the original principal balance less principal payments made on account of
5  that balance), rather than 115% of the amount financed.   Defendant BSRMC could have
6  easily disclosed, and should have accurately and clearly disclosed, that if borrowers paid
7  the remaining payments listed on the TILDS they would in fact be paying 115% of the
8  balance of the original financed amount, rather than merely the balance of the original
9  amount financed.   But Defendant chose not to do so in furtherance of its  fraudulent
10  scheme as alleged herein.

11      81.   At all times relevant, Defendant had exclusive knowledge of these materials
12  facts, but actively concealed the material facts from Plaintiff and Class Members.
13  Plaintiffs relied on the interest rate and monthly payments specified in the note and other
14  loan documents to  be fully amortizing, and believed that making the payments specified
15  in the loan documents would reduce their loan balances, not increase them.

16      82.   The omitted information, as alleged herein, was objectively material to both the
17  interest rate and the amount of payments, which are the two most important features of
18  any mortgage loan.  Had BSRMC disclosed this information, Plaintiffs and Class
19  Members would not have purchased the loan products.

20      83.   Plaintiffs relied on the interest rate and monthly payments specified in the note
21  and other loan documents to be fully amortizing, and believed that making the payments
22  specified in the loan documents would reduce their loan balances, not increase them.
23  Thus, Plaintiffs relied on this material information that they saw in the Loan Documents,
24  but were tricked because of the Material Omissions left out of the Loan Documents as
25  intended by BSRMC.

26      84.   As a direct and proximate result of Defendant's failures to disclose and omission
27  of material facts, as alleged herein, Plaintiffs and Class Members have suffered damages,
28  which include, but are not limited to the loss of equity Plaintiffs and each Class Member

1   had in their homes prior to entering these loans.

2       85.   The wrongful conduct of BSRMC, as alleged herein, including Defendant's

3   placing of their corporate and/or individual profits over the rights of others, was willful,

4   oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in

5   conscious disregard for the well being of Plaintiffs and Class Members, and particularly

6   vile, base, contemptible, and wretched.  Such acts and/or omissions were performed on the

7   part of officers, directors, and/or managing agents of each corporate defendant and/or

8   taken with the advance knowledge of the officers, directors, and/or managing agents who

9   authorized and/or ratified said acts and/or omissions.  BSRMC thereby acted with malice

10  and complete indifference to and/or conscious disregard for the rights and safety of others,

11  including Plaintiffs and the general public.  Accordingly, Plaintiffs and Class Members are

12  entitled to an award of punitive damages against BSRMC in an amount to punish them

13  and to deter them from similar conduct in the future.

14      86.   WHEREFORE, Plaintiffs and Class Members are entitled to all legal and

15  equitable remedies provided by law, including but not limited to actual damages,

16  exemplary damages, unjust enrichment (legal restitution), prejudgment interest and costs.

## VII.

### SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law,**

**Bus. & Prof. Code §§ 17200 *et. seq.***

**"Unlawful," "Unfair" and "Fraudulent" Business Acts or Practices**

24      87.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

25  herein.

26      88.   Plaintiffs bring this cause of action on behalf of themselves, on behalf of the

27  Class Members, and in their capacity as private attorneys general against BSRMC for their

28  unlawful, unfair, fraudulent and/or deceptive business acts and/or practices pursuant to the

27

1  California Business & Professions Code section 17200 *et seq.* ("UCL") which prohibits all
2  unlawful, unfair and/or fraudulent business acts and/or practices.

3      89.  Plaintiffs assert these claims as they are representatives of an aggrieved group
4  and as  private attorneys general on behalf of the general public and other persons who
5  have expended funds that BSRMC should be required to pay or reimburse under the
6  restitutionary remedy provided by California Business & Professions Code §§ 17200, *et*
7  *seq.*

8      90.  The instant claim is predicated on the generally applicable duty of any
9  contracting party to not omit material facts, and on the duty to refrain from unlawful,
10  unfair and deceptive business practices.  Plaintiffs and Class Members hereby seek to
11  enforce a general proscription of unfair business practices and the requirement to refrain
12  from deceptive conduct.  The instant claim is predicated on duties that govern anyone
13  engaged in any business and anyone contracting with anyone else.

14      91.  Plaintiffs and Class Members were consumers who applied for a mortgage loan
15  through BSRMC.  During the loan application process, in each case, BSRMC uniformly
16  failed to disclose and omitted material information that was known only to BSRMC  and
17  that could not reasonably have been discovered by Plaintiffs and Class Members as set
18  forth in the preceding causes of action.

19      92.  Based on The Material Omissions and Defendant's other partially true
20  statements and failures to disclose as alleged herein, Plaintiffs and Class Members agreed
21  to finance their homes through the subject Option ARM loans, and have been actually
22  harmed.

23      93.  BSRMC intended that Plaintiffs would be misled into believing that, if they
24  made payments based on the payment schedules provided to them before they entered into
25  the subject loan, the principal balance would be reduced with each payment when it
26  actually increased with each payment.  The Loan Documents were designed and used for
27  this purpose.  Plaintiffs relied on the interest rate and monthly payments specified in the
28  note and other loan documents to be fully amortizing, and believed that making the

1  payments specified in the loan documents would reduce their loan balances, not increase
2  them.  Thus, Plaintiffs relied on this material information that they saw in the Loan
3  Documents, but were tricked because of the Material Omissions left out of the Loan
4  Documents as intended by BSRMC.

5      94.  BSRMC designed, created, supplied, or were aware of the TILDS which set
6  forth low payments for the first two to five years of the loan.  BSRMC further knew, but
7  did not clearly disclose, that these listed low payments in the TILDS were predicated on
8  an interest rate which would not, in fact, exist after the first thirty days. BSRMC knew, but
9  did not disclose, that negative amortization was *guaranteed* if borrowers made these listed
10 low payments.  BSRMC further knew, but did not disclose, that the listed payments set
11 forth in the TILDS were calculated such that, if the payments were made, borrowers
12 actually would be paying off 115% of the original principal balance.   This information
13 was material to any reasonable borrower, and the omission of such material information
14 would cause a reasonable borrower to believe that the fully amortizing payments shown
15 on the TILDS were in fact those payments necessary to pay off the balance of the original
16 amount financed (i.e., the original principal balance less principal payments made on
17 account of that balance), rather than 115% of the amount financed. BSRMC could have
18 easily disclosed, and should have accurately and clearly disclosed, that if borrowers paid
19 the remaining payments listed on the TILDS they would in fact be paying 115% of the
20 balance of the original financed amount, rather than merely the balance of the original
21 amount financed.  But BSRMC  chose not to do so in furtherance of their unfair and
22 misleading scheme.

23     95.  By engaging in the above-described acts and practices, BSRMC has committed
24 one or more acts of unfair competition within the meaning of California Business &
25 Professions Code §§ 17200, *et seq.*

26     96.  Defendant's misconduct, as alleged herein, gave them an unfair competitive
27 advantage over their competitors.

28     97.  <u>Unlawful</u>:  The unlawful acts and practices of BSRMC  alleged above constitute

1 unlawful business acts and/or practices within the meaning of California Business &
2 Professions Code §§ 17200, *et seq.*  Defendant's unlawful business acts and/or practices
3 as alleged herein have violated numerous laws and/or regulations - federal and/or state,
4 statutory and/or common law - and said predicate acts are therefore *per se* violations of
5 §17200, *et seq.*  These predicate unlawful business acts and/or practices include, but are
6 not limited to, the following: California Civil Code §§ 1572 (Actual Fraud - Omissions),
7 1573 (Constructive Fraud by Omission), and 1710 (Deceit).

8    98.  <u>Unfair</u>: Defendant's omissions and misconduct as alleged in this action
9 constitutes negligence and other tortious conduct and this misconduct gave BSRMC  an
10 unfair competitive advantage over their competitors.

11    99.  Defendant's misconduct as alleged in The Material Omissions and otherwise
12 alleged herein was unfair because (i) it caused Plaintiffs and Class Members substantial
13 injury by, among other things, causing them to lose equity in their homes, (ii) there were
14 absolutely no countervailing benefits to consumers or to competition that could possibly
15 outweigh this substantial injury, and (iii) this injury could not have been avoided or even
16 discovered by the consumers, because it resulted from Defendant's failure to disclose
17 and/or omission of material information that only the BSRMC  knew or should have
18 known.

19    100.       The Material Omissions and other misconduct of BSRMC alleged
20 herein is and was likely to deceive the public, and in fact did deceive the public, and
21 violated the public policy of the State of California.

22    101.  The harm to Plaintiffs, members of the general public and Class Members
23 outweighs the utility of Defendant's policies, acts and/or practices, and consequently
24 Defendant's conduct herein constitutes an unfair business act or practice within the
25 meaning of California Business & Professions Code §§ 17200, *et seq.*  Defendant's
26 misconduct as alleged herein gave also BSRMC  an unfair competitive advantage over
27 Defendant's competitors that did not engage in similar conduct.

28    102.  <u>Fraudulent</u>: Through their omissions and/or acts, practices and non-disclosures

30

1  as alleged herein, BSRMC  designed The Loan Documents in order to deceive the public
2  through the Material Omissions  leading to consumer confusion, including, but not limited
3  to the fact that, for the first two to five years, the loans were negatively amortizing loans.
4  Said omissions, acts, practices and non-disclosures as alleged herein therefore constitute
5  fraudulent business acts and/or practices within the meaning of California Business &
6  Professions Code §§ 17200, *et seq.*

7      103.  Defendant's conduct, as fully described above, was designed to and was
8  therefore likely to deceive members of the consuming public, and at all times, Defendant's
9  failures to disclose and their omission of material facts have been and continue to be
10  unfair, fraudulent, untrue and/or deceptive.

11     104.  As a direct and proximate result of the aforementioned omissions, acts and
12  practices, BSRMC  received monies and continue to hold the monies expended by
13  Plaintiffs and Class Members similarly situated who purchased the ARM loans as
14  described herein.

15     105.  The unfair, deceptive and/or fraudulent business practices of BSRMC, as fully
16  described herein, present a continuing threat to members of the public to be mislead
17  and/or deceived by Defendant's loan forms at issue, as described herein.  Plaintiffs and
18  other members of the general public have no other remedy of law that will prevent
19  Defendant's misconduct as alleged herein from occurring and/or reoccurring in the future.

20     106.  As a direct and proximate result of Defendant's unfair and/or fraudulent
21  conduct alleged herein, Plaintiffs and Class Members have lost hundreds of thousands if
22  not millions of dollars of equity in their homes.  Plaintiffs and Class Members are direct
23  victims of the Defendant's unlawful conduct, and each has suffered injury in fact, and has
24  lost money or property as a result of Defendant's unfair competition.

25     107.  WHEREFORE, Plaintiffs and Class Members are entitled to equitable relief,
26  including restitution, restitutionary disgorgement of all profits accruing to BSRMC
27  because of their unfair, fraudulent, and deceptive acts and/or practices, attorney's fees
28  and costs, declaratory relief, and a permanent injunction enjoining BSRMC  from their

1    unfair, fraudulent and deceitful activity.

2                                    **VIII.**

3                          **THIRD CAUSE OF ACTION**

4                              **Breach of Contract**

5        108.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

6        109.  Plaintiffs and Class Members entered into a written home loan agreement – the

7    contract or Note – with BSRMC which describe terms and respective obligations

8    applicable to the parties herein.

9        110.  Defendant drafted the Notes and did not allow Plaintiffs or Class Members any

10   opportunity to make changes to the Notes and, due to Defendant's superior bargaining

11   position, the Notes were offered on a "take it or leave it" basis.  As such, the Notes and the

12   prepayment penalty riders to the Notes are contracts of adhesion.

13       111.  Each Note and TILDS expressly and impliedly required Defendant to apply

14   Plaintiffs' and Class Members monthly payments to both principal and interest on a fully-

15   amortized basis (*i.e.*, so that negative amortization would not occur) as long as those

16   payments were in the amount reflecting in the Note and the TILDS.  The Notes and the

17   TILDS identified the monthly payments Plaintiffs and the Class Members were required

18   to make.  Defendant was not permitted to impose or charge any different payment amount.

19   As alleged herein, the Notes expressly state and/or imply that those payments would be

20   applied to pay both Principal and interest on the loan.

21       112.  Once Plaintiffs and Class Members entered into these loans, BSRMC switched

22   the interest rate charged on the loans to a much higher rate than the one they promised to

23   Plaintiffs and Class Members as a "yearly rate."  They also demanded payments in

24   amounts that exceeded those permitted by the Notes.

25       113.  As a result of Defendant's breach of the agreement, Plaintiffs and Class

26   Members have suffered harm.  Plaintiffs and Class Members have incurred and will

27   continue to incur additional interest charges on the principal loan balance and surplus

28   interest added to Plaintiffs' and Class Members' principal loan balance.  Furthermore,

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1 │ Defendant's breach has placed Plaintiffs and Class Members in danger of losing their
2 │ homes through foreclosure, as BSRMC has caused Plaintiffs' and Class Members'
3 │ principal loan balances to increase and limited these consumers' ability to make their
4 │ future house payments or obtain alternative home loan financing.

5 │     114.  At all times relevant, there existed a gross inequality of bargaining power
6 │ between the parties to The Loan Documents.  At all times relevant, Defendant
7 │ unreasonably and unconscionably exploited its superior bargaining position and foisted
8 │ upon Plaintiffs and Class Members extremely harsh, one-sided provisions in the contract,
9 │ which Plaintiffs and Class Members were not made aware of and could not reasonably
10 │ have comprehended (*e.g.*, Defendant's fraud and failures to disclose as alleged herein),
11 │ and which attempt to severely limit Defendant's obligations under the contracts at the
12 │ expense of Plaintiffs and Class Members, as alleged herein.

13 │     115.  WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief,
14 │ compensatory damages proximately caused by Defendant's breach of contract as alleged
15 │ herein, pre-judgment interest, costs of suit and other relief as the Court deems just and
16 │ proper.

## IX.

## FOURTH CAUSE OF ACTION

### Tortiuous Breach of Implied Covenant of Good Faith and Fair Dealing

20 │     116.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

21 │     117.  As a direct and proximate result of the omissions and failures to disclose as
22 │ alleged herein, Plaintiffs and the Class members reasonably expected that their payments,
23 │ for the first two (2) to five (5) years of the Defendant's loans at issue would decrease the
24 │ balance due under the loans, rather than increase them.

25 │     117.  At all times relevant during the liability period, BSRMC consciously and
26 │ deliberately failed to apply Plaintiffs' and Class Members' payments in accordance with
27 │ the reasonable expectations of Plaintiffs and the Class Members and uniformly misapplied
28 │ the payments therein, which unfairly frustrated the agreed common purposes and

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1 disappointed the reasonable expectations of Plaintiffs and Class Members.

2      118.  BSRMC uniformly and unfairly interfered with Plaintiffs' and Class Members'
3 rights to receive the principal benefit of the contract, *i.e.*, ownership of their homes.
4 Defendant's loans have stripped away a substantial portion of the equity Plaintiffs and
5 Class Members had in their homes and, in some cases, have actually resulted in the
6 complete loss of their homes through foreclosure.

7      119.  Upon information and belief and at all times relevant, BSRMC  possessed full
8 knowledge and information concerning the above facts about the ARM loans, and
9 otherwise sold these ARM loans throughout the United States, including the State of
10 California.

11      120.  Defendant's placing of their corporate and/or individual profits over the rights
12 of others is particularly vile, base, contemptible, and wretched and said acts and/or
13 omissions were performed on the part of officers, directors, and/or managing agents of
14 each corporate defendant and/or taken with the advance knowledge of the officers,
15 directors, and/or managing agents who authorized and/or ratified said acts and/or
16 omissions.  BSRMC thereby acted with malice and complete indifference to and/or
17 conscious disregard for the rights and safety of others, including Plaintiffs and the general
18 public.

19      121.  At all times relevant, Defendant's conduct, as alleged herein, was malicious,
20 oppressive, and/or fraudulent.

21      122.  As a result of Defendant's conduct, Plaintiffs and Class Members have suffered
22 harm.  Plaintiffs and Class Members have incurred additional charges to their principal
23 loan balance.  Plaintiffs and Class members have incurred and will continue to incur
24 additional interest charges on the principal loan balance and surplus interest added to
25 Plaintiffs' and Class Members' principal loan balance.  Furthermore, Defendant's breach
26 has caused and/or otherwise placed Plaintiffs and Class Members in danger of losing their
27 homes through foreclosure and limited these consumers' ability to  obtain alternative
28 home loan financing.

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

123.   WHEREFORE, Plaintiffs and Class Members are entitled to declaratory relief, all damages proximately caused by Defendant's breach of the implied covenant of good faith and fair dealing as alleged herein, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

# X.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all Class Members pray for judgment against each Defendant, jointly and severally, as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent each of the Classes;

B.    For actual damages according to proof;

C.    For compensatory damages as permitted by law;

D.    For statutory damages as permitted by law;

E.    For punitive damages as permitted by law;

F.    For unjust enrichment and/or legal restitution;

G.    For rescission of the named Plaintiffs' individual loans;

H.    For equitable relief, including restitution;

I.    For restitutionary disgorgement of all profits BSRMC obtained as a result of their unfair competition;

J.    For interest as permitted by law;

K.    For declaratory relief;

L.    For injunctive relief;

M.    For reasonable attorneys' fees and costs; and

N.    For such other relief as is just and proper.

DATED: June 7, 2010                    **BROWNE WOOD GEORGE LLP**

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1

By:  */s/ Eric George*

2          Eric M. George
           Allan Browne

3          2121 Avenue of the Stars, Suite 2400
           Los Angeles, CA 90067

4          Tel.: (310) 274-7100
           Fax: (310) 275-5697

5

**ARBOGAST & BERNS LLP**

6          David M. Arbogast
           Jeffrey K. Berns

7          6303 Owensmouth Ave., 10th Floor
           Woodland Hills, CA 91367-2263

8          Tel.:  (818) 961-2000
           Fax:  (818) 936-0232

9

**KABATECK BROWN KELLNER LLP**

10         Brian S. Kabateck
           Richard L. Kellner, Esq.

11         644 South Figueroa Street
           Los Angeles, California 90017

12         Tel: (213) 217-5000
           Fax: (213) 217-5010

13

**WILLIAMS CUKER & BEREZOFSKY**

14         Mark R. Cuker (admitted *pro hac vice*)
           Michael J. Quirk (admitted *pro hac vice*)

15         1515 Market Street, Suite 1300
           Philadelphia, PA 19102

16         Tel.: (215) 557-0099
           Fax:  (215) 557-0673

17

**SMOGER & ASSOCIATES**

18         Gerson H. Smoger (SBN 79196)
           gersonsmoger@gmail.com

19         Steven M. Bronson (SBN 246751)
           steven.bronson@gmail.com

20         3175 Monterey Blvd
           Oakland, CA, 94602-3560

21         Tel.:  (510) 531-4529
           Fax:  (510) 531-4377

22

**SPIRO MOSS LLP**

23         J. Mark Moore (SBN 180473)
           mark@spiromoss.com

24         11377 W. Olympic Boulevard, Fifth Floor
           Los Angeles, CA 90064-1683

25         Phone:  (310) 235-2468
           Fax:     (310) 235-2456

26

Attorneys for Plaintiffs and all others Similarly
Situated

27

28

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

DATED: June 7, 2010

**BROWNE WOOD GEORGE LLP**

By:   */s/ Eric George*
      Eric M. George
      Allan Browne
      2121 Avenue of the Stars, Suite 2400
      Los Angeles, CA 90067
      Tel.: (310) 274-7100
      Fax: (310) 275-5697

**ARBOGAST & BERNS LLP**
David M. Arbogast
Jeffrey K. Berns
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Tel.: (818) 961-2000
Fax: (818) 936-0232

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck
Richard L. Kellner, Esq.
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

**WILLIAMS CUKER & BEREZOFSKY**
Mark R. Cuker (admitted *pro hac vice*)
Michael J. Quirk (admitted *pro hac vice*)
1515 Market Street, Suite 1300
Philadelphia, PA 19102
Tel.: (215) 557-0099
Fax: (215) 557-0673

**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
gersonsmoger@gmail.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.: (510) 531-4529
Fax: (510) 531-4377

**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)
mark@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683

37

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)

1

Phone:  (310) 235-2468
Fax:     (310) 235-2456

Attorneys for Plaintiffs and all others Similarly Situated

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT - 2:09-cv-05438-SJO (CTx)