1

**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)

2

mark@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor

3

Los Angeles, CA 90064-1683
Tel.: (310) 235-2468

4

Fax: (310) 235-2456

5

6

**WILLIAMS CUKER BEREZOFSKY**          **ARBOGAST & BERNS LLP**
Mark R. Cuker (admitted *Pro Hac Vice*)   David M. Arbogast (SBN 167571)

7

mcuker@wcblegal.com                    darbogast@law111.com
Michael J. Quirk (admitted *Pro Hac Vice*) Jeffrey K. Berns, Esq. (SBN 131351)

8

Mquirk@wcblegal.com                    jberns@law111.com
1515 Market Street, Suite 1300         6303 Owensmouth Ave., 10th Floor

9

Philadelphia, PA 19102                 Woodland Hills, CA 91367-2263
Tel.: (215) 557-0099                   Tel.: (818) 961-2000
Fax: (215) 557-0673                    Fax: (818) 936-0232

10

11

[*Additional counsel listed on signature page*]
Attorneys for Plaintiff and the putative Class

12

13

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

14

15

JOSEPH A. MONACO, ANITA M.          )    **CASE NO. 2:09-cv-05438-SJO (JCx)**
MONACO, and JAMES BRANDT,           )

16

individually and on behalf of all others )   [*Assigned to Hon. S. James Otero*]
similarly situated,                  )

17

                                    )    CLASS ACTION
                Plaintiffs,          )

18

                                    )
        v.                          )    **PLAINTIFFS' REQUEST FOR**

19

                                    )    **PERMISSION TO FILE STATEMENT**
                                    )    **OF RECENT DECISION:***PEEL, et al. v.*

20

BEAR STEARNS RESIDENTIAL            )    ***BROOKSAMERICA MORTGAGE***
MORTGAGE CORPORATION and            )    ***CORPORATION, INC, et al.,* ---**

21

DOES 1 through 200, inclusive,      )    **F.Supp.2d ----, 2011 WL 2174373 (C.D.**
                                    )    **Cal. June 1, 2011)**

22

                Defendants.          )

23

                                    )

24

                                    )    Complaint Filed:    July 24, 2009
                                    )    Trial Date:         Vacated; none set

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs JOSEPH A. MONACO, ANITA M. MONACO, and JAMES BRANDT ("Plaintiffs") hereby request permission to file a Statement of Recent Decision, *Peel, et al. v. BrooksAmerica Mortgage Coporation, Inc et al.*, --- F.Supp.2d ----, 2011 WL 2174373 (C.D. Cal. June 1, 2011), issued by the Central District of California, United States District Court on June 1, 2011. This pleading decision, in a case in which defense counsel Sheppard, Mullin, Richter and Hampton are counsel, bears upon the motion to dismiss filed by defendant Bear Stearns & Co., EMC Mortgage LLC and JPMorgan Chase & Co., and the motion to dismiss filed by defendant Bear Stearns Residential Mortgage Co., both of which were taken under submission by the Court on May 4, 2011 (Dkt. No. 173). A copy of Plaintiffs' Statement of Recent Decision is attached hereto as <u>Exhibit 1</u>.

DATED:  August 16, 2011                    **SPIRO MOSS LLP**

By:  */s/ J. Mark Moore*
     J. Mark Moore (SBN 180473)
     11377 W. Olympic Boulevard, Fifth Floor
     Los Angeles, CA 90064-1683
     Tel.:  (310) 235-2468
     Fax:  (310) 235-2456

**ARBOGAST & BERNS LLP**
David M. Arbogast
Jeffrey K. Berns
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Tel.:  (818) 961-2000
Fax:  (818) 936-0232

**WILLIAMS CUKER & BEREZOFSKY**
Mark R. Cuker (admitted *pro hac vice*)
Michael J. Quirk (admitted *pro hac vice*)
1515 Market Street, Suite 1300
Philadelphia, PA 19102
Tel.:  (215) 557-0099
Fax:  (215) 557-0673

**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
gersonsmoger@gmail.com

Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.:  (510) 531-4529
Fax:  (510) 531-4377

**BROWNE WOODS GEORGE  LLP**
Eric M. George (SBN 166403)
egeorge@bwgfirm.com
Allan Browne (SBN 34923)
abrowne@bwgfirm.com
Michael A. Bowse (SBN 189659)
Mbowse@bwgfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067
Tel.: (310) 274-7100

`                    **BLOOD HURST & O'REARDON LLP**
Timothy G. Blood
Tblood@bholaw.com
Thomas Joseph O'Reardon II
Toreardon@bholaw.com
600 B Street, Suite No. 1550
San Diego, CA 92101
Tel.:  (619) 338-1100
Fax:  (619) 338-1101

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck
bsk@kbklawyers.com
Richard L. Kellner
rlk@kbklawyers.com
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
Fax:  (213) 217-5010

*Attorneys for Plaintiffs and the putative Class.*

# EXHIBIT 1

1
**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)
2
mark@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor
3
Los Angeles, CA 90064-1683
Tel.:  (310) 235-2468
4
Fax:  (310) 235-2456

5
**WILLIAMS CUKER BEREZOFSKY**          **ARBOGAST & BERNS LLP**
6
Mark R. Cuker (admitted *Pro Hac Vice*)      David M. Arbogast (SBN 167571)
mcuker@wcblegal.com                          darbogast@law111.com
7
Michael J. Quirk (admitted *Pro Hac Vice*)   Jeffrey K. Berns, Esq. (SBN 131351)
Mquirk@wcblegal.com                          jberns@law111.com
8
1515 Market Street, Suite 1300               6303 Owensmouth Ave., 10th Floor
Philadelphia, PA 19102                       Woodland Hills, CA 91367-2263
9
Tel.:  (215) 557-0099                        Tel.:  (818) 961-2000
Fax:  (215) 557-0673                         Fax:  (818) 936-0232
10
[*Additional counsel listed on signature page*]
11
Attorneys for Plaintiff and the putative Class

12
### UNITED STATES DISTRICT COURT
13
### CENTRAL DISTRICT OF CALIFORNIA
14

15
JOSEPH A. MONACO, ANITA M.          )   **CASE NO. 2:09-cv-05438-SJO (JCx)**
16
MONACO, and JAMES BRANDT,           )
individually and on behalf of all others   )   [*Assigned to Hon. S. James Otero*]
17
similarly situated,                 )
                                    )   CLASS ACTION
                                    )
                    Plaintiffs,     )
18
                                    )
19
       v.                           )   **STATEMENT OF RECENT
                                    )   DECISION:*PEEL, et al. v.
                                    )   BROOKSAMERICA MORTGAGE
20
BEAR STEARNS RESIDENTIAL            )   CORPORATION, INC, et al.,* ---
MORTGAGE CORPORATION and            )   F.Supp.2d ----, 2011 WL 2174373 (C.D.
21
DOES 1 through 200, inclusive,      )   Cal. June 1, 2011)**
                                    )
22
                    Defendants.     )
                                    )
23
                                    )
                                    )
24
                                    )
                                    )   Complaint Filed:    July 24, 2009
25
————————————————   )   Trial Date:    Vacated; none set
26
27
28

─────────────────────────────────────────────
Statement of Recent Decision - 2:09-cv-05438-SJO (JCx)

1  **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF**

2  **RECORD:**

3        PLEASE TAKE NOTICE that on June 1, 2011, the Central District of California,

4  United States District Court, issued its decision in *Peel, et al. v. BrooksAmerica Mortgage*

5  *Coporation, Inc et al.*, --- F.Supp.2d ----, 2011 WL 2174373 (C.D. Cal. June 1, 2011). This

6  new pleading decision, in which defense counsel Sheppard, Mullin, Richter & Hampton are

7  defense counsel, bears upon the motion to dismiss filed by defendant Bear Stearns & Co.,

8  EMC Mortgage LLC and JPMorgan Chase & Co., and the motion to dismiss filed by

9  defendant Bear Stearns Residential Mortgage Co., both of which were taken under

10  submission by the Court on May 4, 2011 (Dkt. No. 173).   A copy of *Peel* is attached hereto

11  as <u>Exhibit A</u>.

12

13  DATED:  August 16, 2011               **SPIRO MOSS LLP**

14

15                          By:  <u>*/s/ J. Mark Moore*</u>
                             J. Mark Moore (SBN 180473)

16                               11377 W. Olympic Boulevard, Fifth Floor
                             Los Angeles, CA 90064-1683

17                               Tel.:  (310) 235-2468
                             Fax:  (310) 235-2456

18                               **ARBOGAST & BERNS LLP**

19                               David M. Arbogast
                             Jeffrey K. Berns

20                               6303 Owensmouth Ave., 10th Floor
                             Woodland Hills, CA 91367-2263

21                               Tel.:  (818) 961-2000
                             Fax:  (818) 936-0232

22                               **WILLIAMS CUKER & BEREZOFSKY**

23                               Mark R. Cuker (admitted *pro hac vice*)
                             Michael J. Quirk (admitted *pro hac vice*)

24                               1515 Market Street, Suite 1300
                             Philadelphia, PA 19102

25                               Tel.: (215) 557-0099
                             Fax:  (215) 557-0673

26                               **SMOGER & ASSOCIATES**

27                               Gerson H. Smoger (SBN 79196)
                             <u>gersonsmoger@gmail.com</u>

28                               Steven M. Bronson (SBN 246751)
                             <u>steven.bronson@gmail.com</u>

Statement of Recent Decision - 2:09-cv-05438-SJO (JCx)

3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.:  (510) 531-4529
Fax:  (510) 531-4377

**BROWNE WOODS GEORGE  LLP**
Eric M. George (SBN 166403)
egeorge@bwgfirm.com
Allan Browne (SBN 34923)
abrowne@bwgfrim.com
Michael A. Bowse (SBN 189659)
Mbowse@bwgfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067
Tel.: (310) 274-7100

`                          **BLOOD HURST & O'REARDON LLP**
Timothy G. Blood
Tblood@bholaw.com
Thomas Joseph O'Reardon II
Toreardon@bholaw.com
600 B Street, Suite No. 1550
San Diego, CA 92101
Tel.:  (619) 338-1100
Fax:  (619) 338-1101

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck
bsk@kbklawyers.com
Richard L. Kellner
rlk@kbklawyers.com
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
Fax:  (213) 217-5010

*Attorneys for Plaintiffs and the putative Class*

Statement of Recent Decision - 2:09-cv-05438-SJO (JCx)

EXHIBIT A

Westlaw.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
Timothy R. PEEL et al., Plaintiffs,
v.
BROOKSAMERICA MORTGAGE CORPORA-
TION, Inc et al., Defendants.

No. 8:11–cv–0079–JST (RNBx).
June 1, 2011.

**Background:** Mortgagors brought class action in state court against mortgagees, alleging that mortgagees engaged in fraudulent omissions, violated California's unfair competition law (UCL), and breached the contracts of class members. Following removal, mortgagees moved to dismiss.

**Holdings:** The District Court, Josephine Staton Tucker, J., held that:

(1) mortgagors' state law fraud claims based on allegations of deceptive or unfair conduct were not preempted by the Truth in Lending Act (TILA);

(2) mortgagors stated a claim for fraudulent omission;

(3) TILA's safe harbor provision did not preclude mortgagors' fraudulent omissions claim;

(4) mortgagors stated a claim for violation of the UCL; and

(5) mortgagees did not breach mortgagors' loan contracts.

Motion granted in part and denied in part.

West Headnotes

**[1] Evidence 157 🔑1**

157 Evidence
   157I Judicial Notice
     157k1 k. Nature and Scope in General. Most Cited Cases

**Evidence 157 🔑43(3)**

157 Evidence
   157I Judicial Notice
     157k43 Judicial Proceedings and Records
       157k43(3) k. Records and Decisions in Other Actions or Proceedings. Most Cited Cases

In mortgagors' class action against mortgagees, alleging that mortgagees engaged in fraudulent omissions, violated California's unfair competition law, and breached the contracts of class members, the District Court would take judicial notice of an order and complaint in a related proceeding, an order and complaint from another case, and an executed copy of loan documents, where order and complaints were public records, and the loan documents formed the basis of many of mortgagors' allegations. Fed.Rules Evid.Rule 201(b), 28 U.S.C.A.; West's Ann.Cal.Bus. & Prof.Code § 17200 et. seq.

**[2] Federal Civil Procedure 170A 🔑1832**

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
       170AXI(B)5 Proceedings
         170Ak1827 Determination
           170Ak1832 k. Matters Considered in General. Most Cited Cases

Generally, a court may not consider material beyond the complaint in ruling on a motion to dismiss for failure to state a claim. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A 🔑1832**

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
       170AXI(B)5 Proceedings
         170Ak1827 Determination
           170Ak1832 k. Matters Considered in General. Most Cited Cases

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

**Federal Civil Procedure 170A ⊘2533.1**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
            170Ak2533 Motion
               170Ak2533.1 k. In General. Most Cited Cases

A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the noticed facts are not subject to reasonable dispute.

**[4] Evidence 157 ⊘1**

157 Evidence
   157I Judicial Notice
      157k1 k. Nature and Scope in General. Most Cited Cases

Facts contained in the public record are appropriate subjects of judicial notice. Fed.Rules Evid.Rule 201(b), 28 U.S.C.A.

**[5] Evidence 157 ⊘43(3)**

157 Evidence
   157I Judicial Notice
      157k43 Judicial Proceedings and Records
         157k43(3) k. Records and Decisions in Other Actions or Proceedings. Most Cited Cases

**Evidence 157 ⊘43(4)**

157 Evidence
   157I Judicial Notice
      157k43 Judicial Proceedings and Records
         157k43(4) k. Proceedings in Other Courts. Most Cited Cases

A court may take judicial notice of the existence of another court's opinion or of the filing of pleadings in related proceedings; however, the court may not accept as true the facts found or alleged in such documents. Fed.Rules Evid.Rule 201(b), 28 U.S.C.A.

**[6] Antitrust and Trade Regulation 29T ⊘132**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(A) In General
         29Tk132 k. Preemption. Most Cited Cases

**Consumer Credit 92B ⊘32**

92B Consumer Credit
   92BII Federal Regulation
      92BII(A) In General
         92Bk32 k. Truth in Lending, in General. Most Cited Cases

**States 360 ⊘18.19**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.19 k. Banking and Financial or Credit Transactions. Most Cited Cases

Mortgagors' state law fraud claims against mortgagees based on allegations of deceptive or unfair conduct were not preempted by TILA; although TILA protected creditors from inconsistent state disclosure requirements, it did not protect creditors from state statutes prohibiting unfair or deceptive practices to the extent state disclosure requirements were consistent with federal law. Truth in Lending Act, § 111(a)(1), 15 U.S.C.A. § 1610(a)(1); 12 C.F.R. §§ 226.28(a)(1), 226.28(a)(3).

**[7] States 360 ⊘18.11**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.11 k. Congressional Intent. Most Cited Cases

When a statute has an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

**[8] Consumer Credit 92B ☞32**

92B Consumer Credit
   92BII Federal Regulation
      92BII(A) In General
         92Bk32 k. Truth in Lending, in General.
Most Cited Cases

**States 360 ☞18.19**

360 States
   360I Political Status and Relations
      360I(B) Federal Supremacy; Preemption
         360k18.19 k. Banking and Financial or
Credit Transactions. Most Cited Cases

    TILA preempts state law only to the extent
state disclosure requirements are explicitly inconsistent with federal law. Truth in Lending Act, §
111(a)(1), 15 U.S.C.A. § 1610(a)(1); 12 C.F.R. §§
226.28(a)(1), 226.28(a)(3).

**[9] Fraud 184 ☞16**

184 Fraud
   184I Deception Constituting Fraud, and Liability Therefor
      184k15 Fraudulent Concealment
         184k16 k. In General. Most Cited Cases

    Under California law, the elements of a common-law claim for fraudulent omission are: (1) the
defendant concealed or suppressed a material fact;
(2) the defendant was under a duty to disclose the
fact to the plaintiff; (3) the defendant intentionally
concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of
the fact and would have acted differently if she had
known of the concealed or suppressed fact; and (5)
the plaintiff sustained damage as a result of the
concealment or suppression.

**[10] Federal Civil Procedure 170A ☞636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak633 Certainty, Definiteness and
Particularity

         170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

    Allegations in mortgagors' complaint against
mortgagees were sufficient to state fraud with requisite particularity, as required to plead a claim
under California law for fraudulent omission, where
mortgagors not only alleged identities of parties
and date on which they were misled, but they also
attached copies of the loan documents, which they
alleged constituted evidence of the fraudulent omissions, and mortgagees were in a better position to
know which of the mortgagees actually held the
loans. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[11] Federal Civil Procedure 170A ☞636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak633 Certainty, Definiteness and
Particularity

         170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

    To sufficiently state allegations of fraud with
particularity, a plaintiff must include a description
of the time, place, and specific content of the false
representations as well as the identities of the
parties to the misrepresentations. Fed.Rules
Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[12] Federal Civil Procedure 170A ☞636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
         170Ak633 Certainty, Definiteness and
Particularity

         170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

    In the context of a fraudulent omission claim, a
plaintiff cannot plead a specific time or place of a
failure to act; in that instance, a plaintiff may plead
fraud with requisite particularity by alternative
means. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[13] Federal Civil Procedure 170A ☞636**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
            170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

The purpose of rule requiring that, in all averments of fraud or mistake, the circumstances constituting fraud or mistake be stated with particularity is to require a plaintiff to be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[14] Federal Civil Procedure 170A ⬡══636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
            170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

To state allegations of fraud with requisite particularity in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[15] Mortgages 266 ⬡══216**

266 Mortgages
    266IV Rights and Liabilities of Parties
        266k215 Actions for Damages
            266k216 k. Between Parties to Mortgage or Their Privies. Most Cited Cases

Mortgagors stated a claim for fraudulent omission, under California law, against mortgagees, by alleging that even though mortgagees knew that negative amortization was a certainty, they suppressed that fact by representing that negative amortization was only a mere possibility, and that

mortgagees gave a payment schedule to them that provided no options other than making payments that were, in fact, less than the full amount due, again guaranteeing certainty of negative amortization.

**[16] Mortgages 266 ⬡══216**

266 Mortgages
    266IV Rights and Liabilities of Parties
        266k215 Actions for Damages
            266k216 k. Between Parties to Mortgage or Their Privies. Most Cited Cases

Under California law, mortgagors stated fraudulent omissions claim against mortgagees under aiding and abetting theory of liability, by alleging that they drafted loan documents which omitted the material information and required lender to use those documents in originating loans that they would respectively purchase and then securitize.

**[17] Torts 379 ⬡══133**

379 Torts
    379I In General
        379k129 Persons Liable
            379k133 k. Aiding and Abetting. Most Cited Cases

Under California law, liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act.

**[18] Torts 379 ⬡══133**

379 Torts
    379I In General
        379k129 Persons Liable
            379k133 k. Aiding and Abetting. Most Cited Cases

Under California law, aiding and abetting an intentional tort requires actual knowledge of the primary violation, and substantial assistance with the violation.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

**[19] Mortgages 266 ⬤⟶216**

266 Mortgages
   266IV Rights and Liabilities of Parties
     266k215 Actions for Damages
      266k216 k. Between Parties to Mortgage
or Their Privies. Most Cited Cases

   Under California law, mortgagors stated fraudulent omissions claim against mortgagees under joint venture theory of liability, based upon alleged fraudulent omissions in loan documents, where they alleged that lender and mortgagees had an agreement under which lender would sell loans to borrowers, and mortgagees would then purchase the loans from lender and securitize them, and that mortgagees provided financing to lender and dictated and pre-approved loan and disclosure terms and documents.

**[20] Joint Adventures 224 ⬤⟶1.2(1)**

224 Joint Adventures
   224k1.2 Essential Elements
     224k1.2(1) k. In General. Most Cited Cases

   Under California law, a joint venture theory requires plaintiffs to allege that two or more persons who are fiduciaries that have a duty of disclosure and liability to account for profits acted to carry out a single business enterprise for profit.

**[21] Mortgages 266 ⬤⟶216**

266 Mortgages
   266IV Rights and Liabilities of Parties
     266k215 Actions for Damages
      266k216 k. Between Parties to Mortgage
or Their Privies. Most Cited Cases

   Under California law, mortgagors sufficiently pled justifiable reliance on alleged omissions in loan documents to state a fraudulent omissions claim against mortgagees, even though they did not explicitly allege that they read or relied on the loan documents, by alleging that had the loan documents disclosed the omitted information, they would not have entered into the loans.

**[22] Fraud 184 ⬤⟶20**

184 Fraud
   184I Deception Constituting Fraud, and Liability Therefor
     184k19 Reliance on Representations and Inducement to Act
      184k20 k. In General. Most Cited Cases

   Under California law, to plead and prove reliance on a fraudulent omission, a plaintiff must demonstrate that had the omitted information been disclosed, he would have been aware of it and behaved differently.

**[23] Limitation of Actions 241 ⬤⟶100(12)**

241 Limitation of Actions
   241II Computation of Period of Limitation
     241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
      241k98 Fraud as Ground for Relief
       241k100 Discovery of Fraud
        241k100(12) k. What Constitutes
Discovery of Fraud. Most Cited Cases

   Under California law, mortgagors' claim for fraudulent omission based on alleged omissions in loan documents accrued, and three-year statute of limitations began to run, when they discovered the allegedly fraudulent omissions, that is, after expiration of teaser rate, which was at least 30 days after execution of the loans. West's Ann.Cal.C.C.P. § 338(d).

**[24] Limitation of Actions 241 ⬤⟶100(1)**

241 Limitation of Actions
   241II Computation of Period of Limitation
     241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
      241k98 Fraud as Ground for Relief
       241k100 Discovery of Fraud
        241k100(1) k. In General. Most Cited Cases

   Under California law, a cause of action in a fraud or mistake case is not deemed to have accrued until the discovery, by the aggrieved party, of the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

facts constituting the fraud or mistake. West's
Ann.Cal.C.C.P. § 338(d).

**[25] Limitation of Actions 241 ☞100(11)**

241 Limitation of Actions
　　241II Computation of Period of Limitation
　　　　241II(F) Ignorance, Mistake, Trust, Fraud,
and Concealment or Discovery of Cause of Action
　　　　241k98 Fraud as Ground for Relief
　　　　241k100 Discovery of Fraud
　　　　　　241k100(11) k. Diligence in Dis-
covering Fraud. Most Cited Cases

　　The provision tolling operation of California's
three-year statute of limitations for bringing an ac-
tion for relief on the ground of fraud or mistake un-
til discovery is an exception, and, thus, the plaintiff
must affirmatively excuse his failure to discover the
fraud within three years after it took place, by es-
tablishing facts showing that he was not negligent
in failing to make the discovery sooner and that he
had no actual or presumptive knowledge of facts
sufficient to put him on inquiry. West's
Ann.Cal.C.C.P. § 338(d).

**[26] Limitation of Actions 241 ☞104.5**

241 Limitation of Actions
　　241II Computation of Period of Limitation
　　　　241II(G) Pendency of Legal Proceedings, In-
junction, Stay, or War
　　　　241k104.5 k. Suspension or Stay in Gen-
eral; Equitable Tolling. Most Cited Cases

**Limitation of Actions 241 ☞105(2)**

241 Limitation of Actions
　　241II Computation of Period of Limitation
　　　　241II(G) Pendency of Legal Proceedings, In-
junction, Stay, or War
　　　　241k105 Pendency of Action or Other
Proceeding
　　　　　241k105(2) k. Pendency of Action on
Different Cause or in Different Forum. Most Cited
Cases

　　Under California law, a plaintiff's pursuit of a

remedy in another forum equitably tolls the limita-
tions period if the plaintiff's actions satisfy these
factors: (1) timely notice to the defendants in filing
the first claim; (2) lack of prejudice to the defend-
ants in gathering evidence for the second claim; and
(3) good faith and reasonable conduct in filing the
second claim.

**[27] Consumer Credit 92B ☞62**

92B Consumer Credit
　　92BII Federal Regulation
　　　　92BII(C) Effect of Violation of Regulations
　　　　92Bk61 Civil Liabilities and Penalties for
Violations
　　　　　　92Bk62 k. Unintentional Violations
and Bona Fide Errors. Most Cited Cases

**Mortgages 266 ☞216**

266 Mortgages
　　266IV Rights and Liabilities of Parties
　　　　266k215 Actions for Damages
　　　　266k216 k. Between Parties to Mortgage
or Their Privies. Most Cited Cases

　　TILA's safe harbor provision did not preclude
mortgagors' fraudulent omissions claim, under Cali-
fornia law, against mortgagee, where mortgagees'
alleged failure to disclose that if mortgagors fol-
lowed the payment schedule set forth in the loan
documents, negative amortization was certain to oc-
cur, violated TILA's requirements of clear and con-
spicuous disclosures for variable rate mortgages.
Truth in Lending Act, § 102 et seq., 15 U.S.C.A. §
1601 et seq.; 12 C.F.R. § 226.19(b)(2)(vii).

**[28] Antitrust and Trade Regulation 29T ☞
152**

29T Antitrust and Trade Regulation
　　29TIII Statutory Unfair Trade Practices and
Consumer Protection
　　　　29TIII(A) In General
　　　　29Tk152 k. Exemptions and Safe Harbors.
Most Cited Cases

　　Compliance with TILA's disclosure require-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

Page 7

ments provides a safe harbor with respect to a plaintiff's California unfair competition law (UCL) claims based only on the sufficiency of the defendant's disclosures. Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17200 et. seq.

**[29]** **Antitrust and Trade Regulation 29T** 135(1)

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk135 Practices Prohibited or Required
                    29Tk135(1) k. In General; Unfairness. Most Cited Cases

**Antitrust and Trade Regulation 29T** 135(2)

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk135 Practices Prohibited or Required
                    29Tk135(2) k. Source of Prohibition or Obligation; Lawfulness. Most Cited Cases

**Antitrust and Trade Regulation 29T** 136

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk136 k. Fraud; Deceit; Knowledge and Intent. Most Cited Cases

Because California's unfair competition law (UCL) is written in the disjunctive, it applies separately to business practices that are: (1) unlawful; (2) unfair; or (3) fraudulent. West's Ann.Cal.Bus. & Prof.Code § 17200 et. seq.

**[30]** **Antitrust and Trade Regulation 29T** 291

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)1 In General
                29Tk291 k. Persons Liable. Most Cited Cases

Mortgagors sufficiently alleged that mortgagees participated in an unlawful practice, as required to state a claim against mortgagees for violation of California's unfair competition law (UCL), by alleging that mortgagees aided and abetted lender's fraudulent conduct. West's Ann.Cal.Bus. & Prof.Code § 17200 et. seq.

**[31]** **Antitrust and Trade Regulation 29T** 209

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
                29Tk209 k. Finance and Banking in General; Lending. Most Cited Cases

Mortgagors sufficiently alleged that mortgagees engaged in an unlawful, unfair, or fraudulent business act or practice, as required to state a claim against mortgagees for violation of California's unfair competition law (UCL), by alleging that loan and payment schedule based on teaser rate, which resulted in negative amortization, stripped them of equity they had in their homes and pushed them further into debt, and that the payment schedules did not clearly indicate that they were based upon the teaser rate rather the rate listed on the top of the page. West's Ann.Cal.Bus. & Prof.Code § 17200 et. seq.

**[32]** **Antitrust and Trade Regulation 29T** 134

29T Antitrust and Trade Regulation

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

29TIII Statutory Unfair Trade Practices and Consumer Protection
   29TIII(A) In General
     29Tk133 Nature and Elements
      29Tk134 k. In General. Most Cited Cases

The elements of an unfair act or practice in the context of a consumer action for violation of California's unfair competition law (UCL) are: (1) a substantial consumer injury; (2) the injury outweighs any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided. West's Ann.Cal.Bus. & Prof.Code § 17200 et. seq.

**[33] Mortgages 266 ⟾211**

266 Mortgages
   266IV Rights and Liabilities of Parties
     266k211 k. Dealings and Transactions Between Parties. Most Cited Cases

Under California law, mortgagees did not breach mortgagors' loan contracts, although payment schedule provided to mortgagors was certain to result in negative amortization if they paid only amount set forth in the payment schedule, based on a teaser rate, where mortgagees were not parties to the contracts between mortgagors and lender, and loan documents did not unambiguously provide that "minimum payment" set forth in the payment schedule was also the amount due under the loan so that there would be no negative amortization.

**[34] Contracts 95 ⟾326**

95 Contracts
   95VI Actions for Breach
     95k326 k. Grounds of Action. Most Cited Cases

Under California law, a cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.

**[35] Contracts 95 ⟾176(1)**

95 Contracts
   95II Construction and Operation
     95II(A) General Rules of Construction
      95k176 Questions for Jury
       95k176(1) k. In General. Most Cited Cases

Under California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved.

**[36] Contracts 95 ⟾143(2)**

95 Contracts
   95II Construction and Operation
     95II(A) General Rules of Construction
      95k143 Application to Contracts in General
       95k143(2) k. Existence of Ambiguity. Most Cited Cases

Under California law, a contract is ambiguous when, on its face, it is capable of two different reasonable interpretations.

**[37] Contracts 95 ⟾147(1)**

95 Contracts
   95II Construction and Operation
     95II(A) General Rules of Construction
      95k147 Intention of Parties
       95k147(1) k. In General. Most Cited Cases

Under California law, the fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.

Chumahan Benjamin Bowen, David M. Arbogast, Jeffrey K. Berns, Arbogast and Berns LLP, Woodland Hills, CA, Denise L. Diaz, Fremont, CA, Ira R. Spiro, J. Mark Moore, Spiro Moss LLP, Michael A. Bowse, Browne Woods George LLP, Los Angeles, CA, Jennie Lee Anderson, Jessica Moy, Andrus Anderson LLP, San Francisco, CA, Thomas Joseph O'Reardon, II, Timothy G. Blood, Blood Hurst & O'Reardon LLP, San Diego, CA, for

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

Plaintiffs.

Mark D. Johnson, Sanger, CA, Andrew D. Lemar, Leann Pedersen Pope, Stephen R Meinertzhagen, Burke Warren Mackay & Serritella PC, Chicago, IL, Robert S. Beall, Shannon Z. Petersen, Sheppard Mullin Richter & Hampton LLP, Costa Mesa, CA, for Regina J. McClendon, Piret Loone, Severson and Werson, San Francisco, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

JOSEPHINE STATON TUCKER, District Judge.

*1 Plaintiffs filed a class-action lawsuit in California state court alleging that Defendants engaged in fraudulent omissions, violated California's unfair competition law, and breached the contracts of class members. Defendants removed the case to federal court; Defendants Washington Mutual Mortgage Securities Corporation and WaMu Asset Acceptance Corporation filed one Motion to Dismiss (doc. 28), and Defendant Residential Funding Company, LLC filed another Motion to Dismiss (doc. 27). Having reviewed the papers, and taken the matter under submission, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motions to Dismiss.

**I. Background**

Plaintiffs Timothy R. Peel and Cheryl G. Peel ("Peels") refinanced their existing home loan on November 21, 2006, with Defendant BrooksAmerica Mortgage Corporation ("BrooksAmerica"). (First Am. Compl. ("FAC") ¶ 3.) The Peels entered into an Option Adjustable Rate Mortgage ("Option ARM") secured by the Peels' residence. (Id.) The same day BrooksAmerica originated the loan, it was sold to either Defendant Washington Mutual Mortgage Securities Corporation ("WMMSC") or Defendant WaMu Asset Acceptance Corporation ("WAAC") (collectively "WaMu"). (Id.) Although BrooksAmerica informed the Peels that the loan was sold to one of these two Defendants, it has yet to identify the exact entity to which the loan was sold. (Id.) A copy of the Note, Truth in Lending Disclosure Statement ("TILDS"), and Prepayment Penalty Rider (collectively the "Loan Documents") is attached to the FAC as Exhibit 1. (Id.)

Plaintiff Russ Bebout refinanced his existing home loan with BrooksAmerica on December 21, 2006. (Id. ¶ 4.) Bebout also entered into an Option ARM that was secured by his residence. (Id .) BrooksAmerica sold the loan to Defendant Residential Funding Company, LLC ("RFC") on January 16, 2007. (Id.) A copy of Bebout's Loan Documents is attached to the FAC as Exhibit 2.

Plaintiffs Michael Sanford and Marilyn Sanford ("Sanfords") refinanced their existing home loan with BrooksAmerica on February 13, 2007. (Id. ¶ 5.) The Sanfords entered into an Option ARM secured by their residence, which was sold to RFC on the same day it originated. (Id.) A copy of the Sanfords' Loan Documents is attached to the FAC as Exhibit 3. (Id.)

Plaintiff Desiree McIlrath refinanced her existing home loan with BrooksAmerica on February 1, 2007. (Id. ¶ 6.) McIlrath entered into an Option ARM secured by her residence, which was sold to RFC on the same day it originated. (Id.) A copy of McIlrath's Loan Documents is attached to the FAC as Exhibit 4. (Id .)

Although not identical, Plaintiffs allege that all of the Option ARMs that are the subject of the FAC have similar characteristics. In each, there is a monthly payment amount stated in the Note which is based on a low "teaser" interest rate, ranging from 1 % to 3%. (Id. ¶ 19.) In each, the payment schedule listed in the TILDS for the first 3–5 years of the Note was based upon a fully amortizing payment at the low teaser interest rate. (Id.) After thirty days, however, the interest rate in fact went up to the sum of the "index" and the "margin"; for each Plaintiff, this interest rate more than doubled. (Id. ¶¶ 19, 20.) The fact that the payment schedule provided to Plaintiffs was based on an interest rate which was inaccurate was not disclosed, and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

moreover, Plaintiffs' TILDSes referenced a different annual percentage rate ("APR") in the upper left corner, without noting that the payment schedule was based not on the disclosed APR, but on the teaser interest rate that was only the actual interest rate used for the first thirty days of the Option ARM. (*Id.* ¶ 21.) Specifically, the Peels' TILDS listed an APR of 7.7232, but set forth a payment schedule based on the teaser rate of 2.5%; Bebout's TILDS listed an APR of 7.8963, but set forth a payment schedule based on the teaser rate of 2.5%; the Sanfords' TILDS listed an APR of 8.5072, but set forth a payment schedule based on the teaser rate of 2.0%; and McIlrath's TILDS listed an APR of 8.6381, but set forth a payment schedule based on the teaser rate of 1.5%. (*Id.*)

**\*2** As a result, Plaintiffs allege that, in following the payment schedule given to them by BrooksAmerica, it was certain that by the second month into the subject loans, Plaintiffs' payments would not cover the actual monthly payments. (*Id.* ¶ 22.) When this happened, any unpaid part of the actual monthly payment due would be added to the principal balance owed by Plaintiffs; this process is known as negative amortization and results in the loss of equity from one's property. (*Id.*) Plaintiffs allege that although their loans indicate that their interest rates and payment amounts "may change," the Loan Documents were misleading, because they did not indicate that their interest rates and payment amounts were certain to change. (*Id.* ¶¶ 23–29.) In addition, although the Loan Documents indicated that negative amortization "may" occur, this statement was misleading because negative amortization was certain to occur if Plaintiffs followed the only payment schedule given to them by BrooksAmerica. (*Id.* ¶¶ 24, 26.) Plaintiffs also allege that because the Notes of the subject loans stated "I will make a payment every month .... until I have paid all the Principal and Interest ..." they were misled into believing that their payments would be applied to both principal and interest, when in fact, the payments were first applied to interest. (*Id.* ¶ 30.) Plaintiffs allege that had they known of the sharply

increased interest rate, the certain negative amortization on their loans, and the fact that their payments would go to pay interest first, they would not have purchased the subject loans. (*Id.* ¶¶ 28–30, 32)

Moreover, Plaintiffs allege that they were never given any option to voluntarily choose to pay some amount in addition to or different from the amount set forth in the payment schedule provided by the TILDSes and identified as their contractual payment obligation in the Loan Documents. (*Id.* ¶ 39.) Although the Loan Documents said that "[a]fter the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options," Plaintiffs argue that the referenced options were not in fact provided until after the execution of the subject loans. (*Id.*)

Plaintiffs allege that they were not informed of any of the above information about the terms of the subject loans until they were "locked" into their loans because of a prepayment penalty. (*Id.* ¶ 35.) The penalty consisted of "a prepayment charge equal to the interest ... that would accrue during a six-month period of the amount prepaid (if the prepayment amount was greater than 20% of the original principal amount stated in the Note), which was calculated at the rate of interest in effect under the terms of the Note for a prepayment occurring during the first two to three years of the loan." (*Id.* ¶ 35.) Plaintiffs also allege that although the subject Loan Documents failed to disclose the amount by which their loan balances would increase over the first two to three years, Defendants were aware of these amounts because they performed the calculations internally. (*Id.* ¶ 36.)

**\*3** Plaintiffs also allege that each of the subject loans had "payment caps," which provided that, even after the monthly payment increases, the interest rate would increase by no more than 7.5% per year. (*Id.* ¶ 37.) Once the principal increases to 115% of the original loan, however, the 7.5% payment cap no longer applies. (*Id.*) Plaintiffs allege that this is a "built-in payment shock" designed to increase the payments beyond what most borrowers

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

can afford and is thus designed to increase the risk of foreclosure. (*Id.*)

Plaintiffs allege that RFC and WaMu dictated and approved of the loan documents and underwriting guidelines used by BrooksAmerica in the origination of the Option ARMs that are the subject of the FAC ("subject loans"). (*Id.* ¶ ¶ 2, 43, 48.) Plaintiffs allege that WaMu and RFC are assignees of the subject loans. (*Id.* ¶¶ 9, 10.) Plaintiffs also allege that, pursuant to California Civil Code § 1459 and California Code of Civil Procedure § 368, RFC and WaMu are the subsequent purchasers and/or assignees of the subject loans. (*Id.* ¶ 16.) Thus, Plaintiffs allege that RFC and WaMu are directly liable; however, Plaintiffs also argue that RFC and WaMu are liable as aiders and abettors. (*Id.* ¶ 2.)

Plaintiffs allege that RFC, but not WaMu, had a client contract, under which BrooksAmerica agreed to originate Option ARMs, using funds provided by RFC, and RFC agree to purchase those loans. (*Id* . ¶ 49.) Plaintiffs allege that, pursuant to this contract, RFC approved BrooksAmerica to originate and sell loans to RFC, provided that the loans complied with RFC's Client Guide. (*Id.* ¶ 50.) Plaintiffs also allege that RFC was aware of the confusing nature of the Loan Documents, because RFC's own employees could not understand the Option ARMs being purchased by RFC. (*Id.* ¶ 55.) RFC offered a class for its employees that explained how Option ARMs worked, so that RFC's employees could properly verify the information in the Loan Documents and make certain the loan standards set forth in RFC's Client Contract and Client Guide. (*Id* . ¶ 56.)

Plaintiffs have filed three claims against BrooksAmerica, RFC, and WaMu: (1) fraudulent omissions; (2) violations of California's unfair competition law ("UCL") Cal. Bus. & Prof.Code §§ 17200 *et seq.;* and (3) breach of contract. Defendants RFC and WaMu each filed separate a Motion to Dismiss against Plaintiffs.

## II. Legal Standard

When evaluating a Rule 12(b)(6) motion, the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez,* 32 F.3d 1382, 1384 (9th Cir.1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin,* 262 F.3d 871, 877 (9th Cir.2001). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ——U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556 (internal quotation marks and citation omitted).

**\*4** When the legal sufficiency of a complaint's allegations are tested by a motion under Rule 12(b)(6), review is typically limited to the complaint, however, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) (internal quotation marks and citation omitted). In addition, under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). When such a document is offered, "the district court may treat such a document as part of the complaint, and thus may assume

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

**III. Judicial Notice**

[1][2][3] "Generally a court may not consider material beyond the complaint in ruling on a [Rule] 12(b)(6) motion." *Intri–Plex Techs., Inc. v. Crest Grp., Inc.,* 499 F.3d 1048, 1052 (9th Cir.2007). "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," however, as long as the noticed facts are not "subject to reasonable dispute." *Lee,* 250 F.3d at 689 (quoting *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986)).

[4][5] Under Federal Rule of Evidence 201, a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). A fact is appropriate for judicial notice only if it is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b). Facts contained in the public record are appropriate subjects of judicial notice. *Lee,* 250 F.3d at 690; *see also Santa Monica Food Not Bombs v. City of Santa Monica,* 450 F.3d 1022, 1025 (9th Cir.2006). Therefore, a court may take judicial notice of the existence of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents. *Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir.2003) (citing *M/V Am. Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir.1983)); *see also Lee,* 250 F.3d at 690.

Here, Plaintiffs have requested that the Court take judicial notice of complaints filed by the Plaintiffs in related proceedings, as well as complaints and orders from other cases. (Pls.' Request for Judicial Notice ('RJN'), Doc. 37, Exs. 1–11.) Defendant WaMu has requested that the Court take

judicial notice of an order and complaint in a related proceeding, as well as an order and complaint from another case. (WaMu's RJN, Doc. 28–1, Exs. 3–5; WaMu's Reply RJN, Doc. 40–1, Ex. 1.) Because all of these documents appear to be public records from either related proceedings or from other cases, and because the Court may take judicial notice of the existence of another court's opinion, for the purpose of this motion to dismiss, the Court takes judicial notice of the existence of these filings. *See Wyatt,* 315 F.3d at 1114.

**\*5** If a document forms the basis of a plaintiff's complaint, "[t]he defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie,* 342 F.3d at 908. This is permitted to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP Inc.,* 146 F.3d 699, 706 (9th Cir.1998) *superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 681 (9th Cir.2006).

Here, Defendant WaMu has requested that the Court take judicial notice of an executed copy of the Peels' TILDS and their "Adjustable Rate Mortgage Loan Program Disclosure—Payment Option." (WaMu's RJN, Doc. 28–1, Exs. 1–2.) Because these documents form the basis of many of Plaintiffs' allegations, the Court takes judicial notice of these documents and assumes that they are true for purposes of the motions to dismiss. *See Ritchie,* 342 F.3d at 908.

**IV. Discussion**

**A. Preemption**

[6][7][8] RFC argues that any state law fraud claim is expressly preempted by the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1610 et seq. FN1 (RFC Mot. at 19.) Where a statute has an express

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

preemption clause, "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). TILA's preemption provision states:

> Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, *except to the extent that those laws are inconsistent with the provisions of this subchapter* and then only to the extent of the inconsistency. Upon its own motion or upon the request of any creditor, State or other interested party which is submitted in accordance with procedures prescribed in regulations of the Board, the Board shall determine whether any such inconsistency exists. If the Board determines that a State-required disclosure is inconsistent, creditors located in that State may not make disclosures using the inconsistent term or form, and shall incur no liability under the law of that State for failure to use such term or form, notwithstanding that such determination is subsequently amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1610(a)(1) (emphasis added). Under the plain language of the provision, TILA preempts all state law provisions to the extent "that the 'terms and forms' mandated by the state are 'inconsistent' with those required by TILA." *Newbeck v. Wash. Mut. Bank,* No. 09–1599, 2010 WL 291821, *3 (N.D.Cal., Jan.19, 2010). In addition, under Regulation Z, "[a] State law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law." 12 C.F.R. § 226.28(a)(1). "State law requirements that call for the disclosure of items of information not covered by the Federal law, or that require more detailed disclosures, do not contradict

the Federal requirements." 12 C.F.R. Pt. 226, Supp. I, 28(a)(3) (Commentary on Regulation Z). "Thus, TILA preempts state law only to the extent state disclosure requirements are explicitly inconsistent with federal law." *Jordan v. Paul Fin., LLC,* 745 F.Supp.2d 1084, 1095 (N.D.Cal.2010). Thus, courts regularly find that although TILA protects creditors from inconsistent state disclosure requirements, it does not protect creditors from state statutes prohibiting unfair or deceptive practices. *Id.* (citing cases). Therefore, the Court concludes that Plaintiffs' claims that are based on allegations of deceptive or unfair conduct are not preempted by TILA.

**B. Claim One: Fraudulent Omissions**

**\*6** [9] Under California law, the elements of a common-law claim for fraudulent omission are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression. *See Hahn v. Mirda,* 147 Cal.App.4th 740, 54 Cal.Rptr.3d 527, 532 (Cal.Ct.App.2007). Allegations of fraud must be stated with particularity. Fed.R.Civ.P. 9(b). WaMu argues that Plaintiffs' fraud omissions claim must be dismissed because it does not satisfy the heightened pleading standards required of fraud claims under Rule 9(b) or the basic pleading standards of Rule 8(a); that Plaintiffs fail to allege that WaMu ever dealt with Plaintiffs; that Plaintiffs fail to allege reliance or causation; and that the information Plaintiffs claim was omitted was, in fact, disclosed. (WaMu Mot. at 1.) RFC makes the same arguments, and additionally argues that the fraudulent omissions claims are time-barred. (RFC Mot. at 1.)

**i. Pleading standards of a Fraud Claim**

[10][11][12] Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be "state[d]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

with particularity." A plaintiff must include a description of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1048, 1066 (9th Cir.2004)). However, in the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act. *Washington v. Baenziger,* 673 F.Supp. 1478, 1482 (N.D.Cal.1987). In that instance, a plaintiff may plead fraud by alternative means. *Id.*

[13][14] The purpose of Rule 9(b) is to require a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz,* 476 F.3d at 764 (internal quotation marks and citation omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme ." *Id.* at 765 (internal quotation marks and citation omitted).

Both WaMu and RFC argue that the FAC fails to meet Rule 9(b)'s heightened pleading standards. However, as set forth above, the Plaintiffs have not only alleged the identities of the parties and the date on which they were misled, but they have also attached copies of the Loan Documents, which Plaintiffs allege constitute the evidence of the fraudulent omissions. The Court is persuaded that the allegations of the FAC are sufficient to meet the pleading standards under Rule 9(b). *See Ralston v. Mortg. Investors Grp.,* No. C 08–536 JF, 2010 WL 3211931, at *3 (N.D.Cal. Aug.12, 2010).

*7 Additionally, WaMu argues that the Peels fail to identify which of the WaMu Defendants, WMMSC or WAAC, actually holds the loan and moreover fail to identify the role of each Defendant. The Court agrees with Plaintiffs that WaMu is in a better position to know whether WMMSC or WAAC actually purchased the loan, and the fact

that they have chosen not to share that information does not somehow immunize both Defendants from suit. Moreover, although WaMu argues that Plaintiffs "improperly lump Defendants together," the Court has reviewed the FAC and notes that although there are some general common allegations made against all of the Defendants, Plaintiffs have separate paragraphs making more specific allegations about the individually named Defendants and the named class representatives. (*See, e.g.,* ¶¶ 3–10, 21–23, 43–56.)

**ii. Concealment of a Material Fact**

[15] Defendants argue that the facts Plaintiffs allege were omitted were, in fact, disclosed in the Loan Documents. The Court is not persuaded by the reasoning set forth in the cases cited by Defendants. As discussed above, Plaintiffs allege that even though Defendants knew that negative amortization was a certainty, Defendants suppressed that fact by representing that negative amortization was only a mere possibility. Further, Plaintiffs allege that Defendants gave a payment schedule to Plaintiffs that gave them no options other than making payments that were, in fact, less than the full amount due, again guaranteeing the certainty of negative amortization. These allegations are sufficient to withstand a motion to dismiss. *See Ralston,* 2010 WL 3211931, at *4.

**iii. Duty to disclose**

[16] RFC argues that they had no duty to disclose any information to Plaintiffs, because the loans were made by BrooksAmerica, which is a separate and unrelated entity.[FN2] RFC does not argue that BrooksAmerica did not have a duty to disclose material facts and the Court will assume they did have such a duty for purposes of these motions. Plaintiffs argue that Defendants RFC and WaMu also had a duty to disclose because Defendants were (a) aiders and abettors; (b) joint venturers; (c) subsequent purchasers; and (d) direct participants. Because the Court determines that liability against RFC and WaMu may be pursued under the theory of aiders and abettors, and under the theory of joint

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

venturers, the Court does not decide at this stage whether Defendants are also liable as subsequent purchasers or direct participants.

[17][18] "California has adopted the common law rule that liability may be imposed on one who aids and abets the commission of an intentional tort if the person knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 993 (9th Cir.2006) (internal quotation marks and citation omitted). Aiding and abetting requires "actual knowledge of the primary violation." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1119 (C.D.Cal.2003). It also requires "substantial assistance" with the violation. *In re First Alliance Mortg. Co.,* 471 F.3d at 993. Here, Plaintiffs have alleged that both RFC and WaMu drafted the Loan Documents which omit the material information, and required BrooksAmerica to use these documents in originating loans that RFC and WaMu would respectively purchase and then securitize. Therefore, the Court concludes that, at this stage, Plaintiffs have sufficiently stated a claim for aiding and abetting liability. *See Jordan,* 745 F.Supp.2d at 1097; *Ralston,* 2010 WL 3211931, at *5.

**\*8** [19][20] In addition, "[a] joint venture theory requires plaintiffs to allege that two or more persons who are fiduciaries that have 'a duty of disclosure and liability to account for profits' acted 'to carry out a single business enterprise for profit.' " *Jordan,* 745 F.Supp.2d at 1097 (quoting *Weiner v. Fleischman,* 54 Cal.3d 476, 286 Cal.Rptr. 40, 816 P.2d 892, 895 (Cal.1991)). Here, Plaintiffs alleged in the FAC that BrooksAmerica and WaMu had an agreement under which BrooksAmerica would sell Option ARMs to borrowers, and WaMu would then purchase the loans from BrooksAmerica and securitize them. (FAC ¶ 43(d).) Plaintiffs allege that to facilitate this process, WaMu provided a "stream of financing" to BrooksAmerica (*id.* ¶ 43, 286 Cal.Rptr. 40, 816 P.2d 892(i)) and "dictated and pre-approved loan and disclosure terms and docu-

ments, including the Peels' Loan Documents." (*Id.* ¶ 43, 286 Cal.Rptr. 40, 816 P.2d 892(e).) Indeed, WaMu "made the pre-approved loan and disclosure documents available to originators through document service companies, thereby allowing BrooksAmerica to merely insert the monthly payment amounts, interest rates and principal amounts (which were required to comply with the WaMu defendants' underwriting guidelines and rate sheets available to BrooksAmerica) into the pre-approved loan documents, print the loan documents and provide them to Class Members such as the Peels." (*Id.* ¶ 43, 286 Cal.Rptr. 40, 816 P.2d 892(f).) Thus, the Court concludes that Plaintiffs have made sufficient allegations to pursue a theory of joint venture liability against WaMu. *See Jordan,* 745 F.Supp.2d at 1097.

Similarly, Plaintiffs allege that RFC and BrooksAmerica had an agreement under which RFC agreed to purchase Option ARMs originated by BrooksAmerica. (FAC ¶ 48(b).) Plaintiffs allege that BrooksAmerica received working capital from RFC (*id.* ¶ 48(j)) and established criteria and instructions that BrooksAmerica was to follow for loans that were to be sold to RFC. (*Id.* ¶ 48(g).) Thus, the Court concludes that Plaintiffs have also made sufficient allegations to pursue a theory of joint venture liability against RFC. *See Jordan,* 745 F.Supp.2d at 1097.

**iv. Justifiable Reliance**

[21][22] "To plead and prove reliance, a plaintiff must demonstrate that 'had the omitted information been disclosed, [he] would have been aware of it and behaved differently.' " *Ralston,* 2010 WL 3211931, at *5 (quoting *Mirkin v. Wasserman,* 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568, 574 (Cal.1993)). The Peels allege that, had the Loan Documents disclosed the omitted information, they would not have entered into the subject loans. (*See, e.g.,* ¶ 28.) WaMu argues, however, that because the FAC fails to allege that the Peels "read or relied" on the Loan Documents, Plaintiff has failed to allege reliance or causation.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

(WaMu Mot. 12–13.)

WaMu's reliance on *Quezada v. Loan Center of California, Inc.,* No. CIV 2:09–00177 WBS, 2009 WL 5113506 (E.D.Cal. Dec.18, 2009) for the proposition that a plaintiff must specifically state in his complaint that he "read" the loan documents is overly formalistic and misplaced. In *Quezada,* the court denied plaintiff's motion for class certification, because it found that the plaintiff's allegation that she did not speak English would subject her to a unique defense that she did not read and rely on the alleged fraudulent omissions when she decided to enter into the loan, which thus prevented the court from finding that typicality requirement was met. *Id.* at *4–*5 (holding that defendants rebutted any presumption of reliance because the plaintiff did not have a good grasp of English and had the loan explained to her by a translator). Here, Defendants have failed to point to any allegations that would rebut the presumption of reliance on the Loan Documents, other than Plaintiffs' failure to use the magic words "read and relied on." Having reviewed the FAC, the Court concludes that Plaintiffs sufficiently allege that they relied on the information in the Loan Documents.

**v. Statute of Limitations**

**\*9** [23][24][25] RFC argues that Plaintiffs' fraud claims are time-barred, stating that "[b]ecause Plaintiffs' fraudulent omissions claim is entirely based on alleged omissions about the ARM Notes terms and the disclosures at the inception of the loan, the statute began running, at the very latest, on the date that the loans closed." (RFC Mot. at 22–23.) RFC is correct that California Code of Civil Procedure § 338(d) sets a three-year statute of limitation to bring an action for relief on the ground of fraud or mistake. Cal. Civ. P.Code § 338(d). However, "[t]he cause of action in [a fraud or mistake] case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* The provision tolling operation of the statute until discovery is an exception, thus "the plaintiff must affirmatively ex-

cuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual Or [sic] presumptive knowledge of facts sufficient to put him on inquiry." *Sun'n Sand, Inc. v. United Cal. Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 941 (Cal.1978) (internal quotation marks and citations omitted). Here, Plaintiffs' allegations that Defendants committed fraud by omitting material information from the Loan Documents for the subject loans is sufficient to invoke the tolling operation of the statute until the discovery of the fraud. Plaintiffs' allegations suggest that the *earliest* they discovered the fraud was after the expiration of the teaser rate, which was at least 30 days after the execution of the loans.

[26] Moreover, it is not clear to this Court whether California's doctrine of equitable tolling might be appropriate in the case at hand. As noted by the Ninth Circuit, "California courts 'have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute.' " *Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (9th Cir.1993) (quoting *Elkins v. Derby,* 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81, 87 (Cal.1974) ). California has developed a three-pronged test for invocation of the doctrine: "[a] plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Id.* Of importance here is the focus on the effect of the prior claim in warning Defendants in this action of the need to prepare a defense, which requires the Court to delve into the factual similarity of the claims. *See id.* at 1276. "As such, 'similarity' is not easily resolved as a matter of law, without receiving evidence." *Id.* For all of these reasons, the Court concludes that, for purposes of RFC's Motion to Dismiss, Plaintiffs' claims are not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

time-barred.

**vi. TILA Safe Harbor**

**\*10** [27][28] RFC argues that it complied with TILA's disclosure requirements and is therefore protected against Plaintiffs' state law claims by TILA's safe harbor. "[C]ompliance with TILA's disclosure requirements provides a safe harbor with respect to [a plaintiff's] UCL claims based only on the sufficiency of [the defendant's] disclosures." *Hauk v. JP Morgan Chase Bank USA,* 552 F.3d 1114, 1122 (9th Cir.2009).

As noted by the Ninth Circuit, however, " *Hauk* did not condone misleading disclosures.... It did not hold that a creditor was allowed to mislead consumers about information that TILA specifically requires be disclosed." *Rubio v. Capital One Bank,* 613 F.3d 1195, 1200 (9th Cir.2010). Thus the Court held that, in the context of a credit card, "an APR disclosure that is not 'clear and conspicuous' is *ipso facto* 'misleading.' " *Id* . Here, although Plaintiffs have not made any claims under TILA, the Court concludes that, accepting all allegations in the light most favorable to the non-moving party, Plaintiffs could show violations of TILA. Variable rate mortgages such as the subject loans must comply with the specific disclosure requirements set forth in 12 C.F.R. § 226.19(b)(2). Subsection 226.19(b)(2)(vii) states that lenders must disclose "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover." The Official Staff Commentary to this subsection explains:

Negative amortization and interest rate carryover. A creditor must disclose, where applicable, the possibility of negative amortization. For example, the disclosure might state, "If any of your payments is not sufficient to cover the interest due, the difference will be added to your loan amount." ... If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the

rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase)....

12 C.F.R. Pt. 226, Supp. I, at Para. 19(b)(2)(vii)(2).

Here, Plaintiffs have alleged that Defendants failed to disclose that if Plaintiffs followed the payment schedule set forth in the TILDS, negative amortization was certain to occur. Although the Loan Documents appear to be literally accurate, they refer to negative amortization as a mere possibility. As alleged in the FAC, however, under any conceivable index value, Plaintiffs' initial minimum monthly payments would not be sufficient to cover interest, even at the time the disclosures were provided. Thus, negative amortization was a certainty if Plaintiffs followed the payment schedule listed in the TILDS. The Court concludes that, this is at least one example from the FAC which could be shown to violate TILA's requirements of clear and conspicuous disclosures. Therefore, at this time, the Court concludes that RFC cannot take advantage of TILA's safe harbor against state claims. *See Plascencia v. Lending 1st Mortg.,* No. C 07–4485 CW, 2008 WL 1902698, at \*5–\*6 (N.D.Cal. Apr.28, 2008).

**C. Claim Two: Violation of UCL**

**\*11** [29] The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Cel—Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 540 (1999). WaMu argues that Plaintiffs fail to allege a violation of California's UCL under any of the three prongs.

[30] First, WaMu argues that the UCL does not impose vicarious liability and that Plaintiffs' factual allegations that WaMu was both a "primary participant" and that WaMu "aided and abetted" Brook-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

sAmerica's fraudulent behavior, are insufficient to show participation in an "unlawful practice." As determined by the Court above, Plaintiffs have alleged that WaMu aided and abetted BrooksAmerica's fraudulent conduct; therefore, the Court rejects this argument. *See Ralston,* 2010 WL 3211931, at *6.

[31] Second, WaMu argues that the "fraud" prong is not met for the same reasons it argues that the fraudulent omissions claims fails, that the "unlawful" prong is not met because Plaintiffs base their "unlawful" UCL claims on their fraudulent omissions claim, and that the "unfairness" prong is not met because Plaintiffs only reiterate the standard for the claim. (WaMu Mot. at 19–20.) RFC similarly argues that Plaintiffs fail to make a claim under the UCL for the same reasons they fail to make a claim for fraudulent omissions. With the exception of arguments about the "unfairness" prong, the Court examined and rejected all of these arguments in its review of Plaintiffs' fraudulent omissions claims above.

[32] "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a [ § 17200] consumer action." *Rubio,* 613 F.3d at 1204–05. The Court adopts the three-factor "section 5 test" from the well-reasoned opinion in *Camacho v. Automobile Club of Southern California.,* 142 Cal.App.4th 1394, 48 Cal.Rptr.3d 770 (2006). Under the "section 5 test," the elements are:

(1) a substantial consumer injury;

(2) the injury outweighs any countervailing benefits to consumers or competition; and

(3) the injury could not reasonably have been avoided.

*Id.* at 777. Here, there is no question that Plaintiffs have alleged a "substantial consumer injury." *See Jordan,* 745 F.Supp.2d at 1099. In addition, although there are instances where a consumer might benefit from making a loan payment based

on a low teaser rate rather than paying the full amount necessary on a variable-rate loan, here, the loan and payment schedule served to strip Plaintiffs of equity they had in their homes and push them further into debt. *Id.* Thus, the Court finds that the first two parts of the section 5 test are easily met at this stage of the action.

As to the third part of the section 5 test, the Court finds the analysis in *Jordan v. Paul Financial, LLC.,* a similar mortgage case, to be persuasive. In *Jordan,* the plaintiffs brought a class-action lawsuit against both the mortgage originators and the financial institutions that allegedly funded and later purchased and securitized the subject loans. In evaluating whether the plaintiffs alleged a UCL claim under the section 5, the court wrote:

**\*12** [Defendant] correctly points out that the loan documents specify the terms of the loan and the possibility of negative amortization. A sophisticated consumer might have been able to deduce from the loan documents that negative amortization was certain to occur because the minimum payments listed in the payment schedule were based upon a "teaser" rate rather than the APR, which was displayed in a box above the payment schedule. Thus, a consumer could have paid an amount greater than the minimum payments required in order to prevent negative amortization. However, "the fact that Defendant may have provided a technically accurate disclosure does not excuse the potentially inadequate or misleading character of other disclosures it provided or lessen the resulting potential for confusion." *Amparan v. Plaza Home Mortg., Inc.,* 678 F.Supp.2d 961, 973 (N.D.Cal.2008). Therefore, at issue is whether plaintiffs' allegations establish that they could have *reasonably avoided* the injury, not whether it was merely possible to avoid the injury.

Plaintiffs have sufficiently alleged that they did not discover the certainty of negative amortization until they were "locked in" with a harsh prepayment penalty under the terms of the agree-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

ment. They allege that the loan documents do not clearly specify the certainty of negative amortization. The provision in the loan documents detailing negative amortization states only that "[m]y monthly payment *could* be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe." Tussey Decl., ex 18. at 92 (emphasis added). Additionally, the payment schedule does not clearly indicate it is based upon the teaser rate rather than the APR listed on the top of the page. Thus, plaintiffs have sufficiently alleged that an ordinary consumer relying on the plain language of the loan agreement might not have been able to avoid the injury of negative amortization because they did not understand it was certain to occur. This is sufficient to allege a violation of the "unfair" prong of the UCL.

745 F.Supp.2d at 1100. Here, like the plaintiffs in *Jordan,* Plaintiffs attached to the FAC the Loan Documents that provided for certain negative amortization if Plaintiffs followed the payment schedule provided by BrooksAmerica.FN3 Similarly, by the time Plaintiffs discovered the certainty of negative amortization, they were "locked in" as a result of the prepayment penalty rider. Finally, like the loans at issue in *Jordan,* the Loan Documents here indicate only that "Minimum Payment could be less or greater than the amount of the interest portion" and the payment schedules do not clearly indicate that they are based upon the teaser rate rather the APR listed on the top of the page. Therefore, for the same reasons set forth in *Jordan,* this Court concludes that Plaintiffs have sufficiently alleged that ordinary consumers relying on the plain language of the Loan Documents might not have been able to avoid the injury of negative amortization because they did not understand that it was certain to occur, and this sufficiently alleges a violation of the unfair prong of the UCL. *See id.* Accordingly, the DENIES WaMu and RFC's motions with respect to Plaintiffs' UCL claim.

**D. Claim Three: Breach of Contract**

**\*13** [33][34] In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado,* 158 Cal.App.4th 1226, 70 Cal.Rptr.3d 667, 679 (Cal.Ct.App.2008). WaMu argues that Plaintiffs cannot state a breach of contract claim against them, because WaMu was not a party to the contract. (WaMu Mot. at 22.) Moreover, WaMu argues that there was no breach, because the Peels' Note allows monthly payments to be applied to the interest before principal and for an adjustable interest rate. (*Id.* at 23–25, 70 Cal.Rptr.3d 667.) RFC also argues that the remaining Plaintiffs cannot allege a breach of contract because the terms of the Loan Documents are "simply not reasonably susceptible to Plaintiffs' interpretation." (RFC Mot. at 25.) Plaintiffs argue that the contracts are, at the very least, ambiguous as to the application of Plaintiffs' payment to both interest and principal and the adjustable interest rate.

[35][36][37] "Under California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved." *Southland Corp. v. Emerald Oil Co.,* 789 F.2d 1441, 1443 (9th Cir.1986); *see U.S. for Use of White Masonry, Inc. v. F.D. Rich Co.,* 434 F.2d 855, 856 (9th Cir.1970) (citing cases) ("Whether a contract is or is not ambiguous is a question of law for the court."). "A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations." *United Teachers of Oakland v. Oakland Unified Sch. Dist.,* 75 Cal.App.3d 322, 142 Cal.Rptr. 105, 110 (Cal.Ct.App.1977). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the W. v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 552 (Cal.1992). However, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)
**(Cite as: 2011 WL 2174373 (C.D.Cal.))**

time of making it, that the promisee understood it."
Cal. Civ.Code § 1649.

Plaintiffs appear to argue in their Oppositions to both Motions, that because there was a minimum payment schedule and because the Loan Documents stated that the payments would go to both principal and interest, that one reasonable interpretation of the contract is that the "minimum payment" set forth in the schedule was also the amount due under the loan so that there would be no negative amortization. Here, although the Court has held that Plaintiffs may be able to show that, considered as a whole, the disclosures of the Loan Documents provide confusing and seemingly contradictory information concerning the terms of the loan, the particular interpretation of the loan set forth by the Plaintiffs is not reasonable, nor is it supported by the plain language of the Loan Documents. *See Plascencia v. Lending 1st Mortg.,* 583 F.Supp.2d 1090, 1101 (N.D.Cal.2008). Thus, although the Court concludes that Plaintiffs may have a viable claim against Defendants for failing to disclose certain information, the Court concludes that Plaintiffs do not have a claim for breach of contract. Therefore the Court GRANTS Defendants' Motion on this claim with prejudice.

**V. Conclusion**

**\*14** For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART WaMu's and RFC's Motions to Dismiss.

> FN1. Specifically, RFC argues that "Plaintiffs' attempt to alter the remedial scheme of TILA," by seeking to eliminate the $500,000 class action cap under TILA and impose a longer statute of limitations period, is preempted. (RFC Mot. at 19.)

> FN2. WaMu makes a similar allegation with regard to Plaintiffs' UCL claim, but made no such arguments with regard to Plaintiffs' claim of fraudulent omissions except in a vague footnote (WaMu Mot. at 22 n. 8) and in conclusory statements

without citation to authority in its Reply (WaMu Reply at 9). Because WaMu's arguments pursuant to the UCL claim are similar, the Court examines WaMu's duty to disclose at this juncture.

> FN3. Plaintiffs' interest rates were calculated by adding a margin to the index rate. Even if the index went down to zero, the combined total of the margin and index would not be close to the teaser rate. Thus, if Plaintiffs followed the payment schedule provided to them, negative amortization was certain to occur.

C.D.Cal.,2011.
Peel v. BrooksAmerica Mortg. Corp.
--- F.Supp.2d ----, 2011 WL 2174373 (C.D.Cal.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.