**SPIRO MOORE LLP**
J. Mark Moore (SBN 180473)
mark@spiromoore.com
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

**WILLIAMS CUKER BEREZOFSKY LLC**
Mark R. Cuker (admitted *Pro Hac Vice*)
mcuker@wcblegal.com
Michael J. Quirk (admitted *Pro Hac Vice*)
Mquirk@wcblegal.com
1515 Market Street, Suite 1300
Philadelphia, PA 19102
Tel.: (215) 557-0099
Fax: (215) 557-0673

*Attorneys for Plaintiffs, the Certified Class, and the Certified BSRMC and TILA Subclasses*

*[Additional counsel listed in signature block]*

**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
20700 Ventura Boulevard, Suite 140
Woodland Hills, CA 91364
Tel.: (818) 961-2000
Fax: (818) 999-1500

– and –

Lee A. Weiss (admitted *pro hac vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, New York 11530
Tel.: (516) 222-2900
Fax: (818) 999-1500

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH A. MONACO, ANITA M. MONACO, and JAMES BRANDT, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BEAR STEARNS RESIDENTIAL MORTGAGE CORPORATION; BEAR STEARNS & CO.; EMC MORTGAGE CORPORATION; JP MORGAN CHASE & CO.; and DOES 1 through 200, inclusive, <br><br> Defendants. | CASE NO. 2:09-cv-05438-SJO (JCx) <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: October 7, 2013 <br> Time: 10:00 a.m. <br> Place: Courtroom 1 <br> Judge: Hon. S. James Otero <br><br> Complaint Filed: July 24, 2009 <br> Trial Date: Vacated |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 7, 2013, at 10:00 a.m., or as soon thereafter as counsel may be heard, Plaintiffs Joseph A. Monaco, Anita M. Monaco, and James Brandt ("Plaintiffs") will bring on for hearing before the Honorable S. James Otero, United States District Judge, in Courtroom 1 – 2nd Floor, 312 North Spring Street, Los Angeles, California, this Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

The motion seeks an order: (1) granting preliminary approval of the proposed Settlement Agreement and Release (the "Settlement Agreement")[2] between Plaintiffs, on behalf of themselves and the Class (as defined below), and defendants Bear Stearns Residential Mortgage Corporation ("BSRMC"), Bear, Stearns & Co., Inc. n/k/a J.P. Morgan Securities LLC ("BS&Co."), EMC Mortgage Corporation, n/k/a EMC Mortgage LLC ("EMC"), and JPMorgan Chase & Co. ("JPMC") (collectively the "Defendants," and collectively with Plaintiffs, the "Parties"); (2) appointing and approving Kurtzman Carson Consultants LLC as Settlement Administrator; (3) approving the form and manner of notice to Class Members; and (4) scheduling a hearing to consider final approval of the Settlement Agreement and setting deadlines, (the "Preliminary

---

[1] Defendants do not oppose the relief sought by this motion.

[2] Capitalized terms herein shall have the same meaning as in the Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Jeffrey K. Berns filed concurrently with this motion. The Settlement Agreement is currently unexecuted, but all parties and their counsel have agreed that they will sign the Settlement Agreement, in the exact form as Exhibit 1 to the Berns Declaration as soon as practicable, after which Plaintiffs will file the executed Settlement Agreement via ECF.  Declaration of Jeffrey K. Berns, ¶29.

Approval Order"). (A proposed form of the Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.)

For the reasons set forth in greater detail in the accompanying Memorandum of Points and Authorities, Plaintiffs respectfully submit that this Court should grant preliminary approval of the proposed settlement, including:

1. Preliminarily finding that the proposed settlement (the "Settlement") as reflected in the Settlement Agreement is fair, reasonable, and in the best interests of the Class and Subclasses, and that it warrants notifying the Class of the terms of the proposed Settlement and of their rights in connection with the proposed Settlement;

2. Setting the hearing for the Court to consider final approval of the proposed Settlement and its terms, an award of attorneys' fees and expenses for Class Counsel, and an incentive payment to each of the Plaintiffs for their services in this Action ("Final Approval Hearing");

3. Approving the form and content of the notice of settlement for the Class (the "Individual Class Notice"), substantially in the form of Exhibit A to the Settlement Agreement, and authorizing its dissemination to the Class pursuant to the terms of the Settlement Agreement;

4. Approving the Publication Notice, substantially in the form attached as Exhibit B to the Settlement Agreement, and authorizing its publication pursuant to the terms of the Settlement Agreement;

5. Establishing deadlines consistent with the Settlement Agreement for the mailing of the Individual Class Notice, the publication of the Publication Notice, the filing of objections, the filing of motions, the submission of requests for exclusion from the Class, and the filing of papers in connection with the Final Approval Hearing;

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)

6.     Appointing and approving Kurtzman Carson Consultants LLC as Settlement Administrator; and

7.     Prohibiting and preliminarily enjoining the Plaintiffs, all Class Members (excepting those who are Successful Opt-Outs), Class Counsel, and Plaintiffs' Counsel from commencing, prosecuting, or assisting in any lawsuit against the Released Parties that asserts or purports to assert matters within the scope of the Release during the time between entry of the Preliminary Approval Order and final determination by the Court regarding whether to finally approve the Settlement in the Action.

This Motion is based on the Notice of Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Jeffrey K. Berns, with exhibits; the Settlement Agreement, with exhibits (including the proposed Individual Class Notice and the proposed Publication Notice); the pleadings, orders, transcripts, and other papers on file in this matter; and any further evidence and arguments as may be presented at the hearing of this matter.

Dated:  August 30, 2013

**BERNS WEISS LLP**

By:   /s/ Jeffrey K. Berns
Jeffrey K. Berns
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Tel.:  (818) 961-2000
Fax:  (818) 999-1500

– and –

Lee A. Weiss (admitted *pro hac vice*)
585 Stewart Avenue, Suite L-20
Garden City, New York 11530
Tel.:  (516) 222-2900
Fax:  (818) 999-1500

**SPIRO MOORE LLP**
J. Mark Moore
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, California 90064-1683

3

Tel.:  (310) 235-2468
Fax:  (310) 235-2456

**WILLIAMS CUKER BEREZOFSKY**
Mark R. Cuker (admitted *pro hac vice*)
Michael J. Quirk (admitted *pro hac vice*)
1515 Market Street, Suite 1300
Philadelphia, PA 19103-1819
Tel.:  (215) 557-0099
Fax:  (215) 557-0673

**ARBOGAST BOWEN LLP**
David M. Arbogast
Chumahan B. Bowen
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.:  (310) 477-7200
Fax:  (310) 943-2309

*Attorneys for Plaintiffs, the Certified Class,
and the Certified BSRMC and TILA
Subclasses*

4

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    SUMMARY OF THE CASE ................................................. 1

III.   SUMMARY OF THE PROPOSED SETTLEMENT .............. 5

     A.    Settlement Negotiations ............................................. 5

     B.    The Terms of the Proposed Settlement Agreement ...... 6

         1.    Settlement Payments ...................................... 6

         2.    Attorneys' Fees and Costs Award .................. 8

         3.    Incentive Payments ........................................ 9

         4.    Release By Class Members ............................ 9

         5.    Notice ............................................................ 9

         6.    Final Approval Hearing ................................. 11

     C.    The Proposed Implementation Schedule .................... 11

IV.   PRELIMINARY APPROVAL OF THE TERMS OF THE
PROPOSED SETTLEMENT IS WARRANTED ................... 14

     A.    The Settlement Terms are Fair, Reasonable, and Adequate,
Within the Range of Reasonableness ........................... 16

     B.    The Court Should Order Dissemination Of The Proposed
Notices ....................................................................... 19

     C.    The $5,000 Incentive Payments to Each Plaintiff Are
Reasonable .................................................................. 21

V.    A FINAL APPROVAL HEARING SHOULD BE SET, ALONG
WITH EXCLUSION, OBJECTION, AND MOTION DEADLINES ... 22

VI.   THE COURT SHOULD APPOINT KURTZMAN CARSON
CONSULTANTS LLC AS SETTLEMENT ADMINISTRATOR ........ 22

VII.   CONCLUSION ................................................................... 23

1

## TABLE OF AUTHORITIES

2
<u>**Page(s)**</u>

3
### <u>Federal Cases</u>

4
*Acosta v. Trans Union, LLC*
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................................. 15
5

*Browning v. Yahoo! Inc.*
6   No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ......... 20

7
*Chun-Hoon v. McKee Foods Corp.*
   2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ............................................. 14
8

*Churchill Village, LLC v. General Electric Co.*
9   361 F.3d 566 (9th Cir. 2004) ............................................................... 14, 15

*Class Plaintiffs v. City of Seattle*
10   955 F.2d 1268 (9th Cir. 1992) ................................................................... 14
11

*Eisen v. Carlisle & Jacquelin*
12   417 U.S. 156 (1974) .................................................................................. 20

13
*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) .................................................. 8, 14, 15, 16
14

*In re Activision Sec. Litig.*
15   723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................ 8

16
*In re Compact Disc Minimum Advertised Price Antitrust Litig.*
   216 F.R.D. 197 (D. Me. 2003) ................................................................... 21
17

*In re Corrugated Container Antitrust Litig.*
18   643 F.2d 195 (5th Cir. 1981) ..................................................................... 14

19
*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ....................................................................... 8
20

*In re Pacific Enterprises Securities Litig.*
21   47 F.3d 373 (9th Cir. 1995) ...................................................................... 14

22
*In re TD Ameritrade Account Holder Litig.*
   Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226 (N.D.
23   Cal. Sept. 13, 2011) ................................................................................. 20

24
*In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales
   Practices Litig.*
25   5:09-MD-02015-JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011) ...... 18, 21

26
*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................... 14, 15, 16, 17, 18
27

ii

28

*Perry v. FleetBoston Financial Corp.*
    229 F.R.D. 105 (E.D. Pa. 2003)..................................................... 21

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009)........................................................ 14

*Silber v. Mabon*
    18 F.3d 1449 (9th Cir. 1994)........................................................ 20

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003).................................................. 14, 21

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993)......................................................... 16

**FEDERAL RULES**

Fed. R. Civ. P. 23(c) ....................................................................... 19

Fed. R. Civ. P. 23(e) ................................................................. 14, 19

Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments,
Subdivision (e)) ........................................................................... 20

**OTHER AUTHORITIES**

Manual for Complex Litigation (fourth) § 21.62 (2004) ................................... 15

Manual for Complex Litigation (fourth) § 21.633 (2004) ............................... 22

3 *Newberg on Class Actions* § 8:32 (4th ed.)...................................... 19

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

By this motion, Plaintiffs Joseph A. Monaco, Anita M. Monaco, and James Brandt ("Plaintiffs") seek preliminary approval of their proposed class action Settlement with Defendants Bear Stearns Residential Mortgage Corporation ("BSRMC"), Bear, Stearns & Co., Inc. n/k/a J.P. Morgan Securities LLC ("BS&Co"), EMC Mortgage Corporation, n/k/a EMC Mortgage LLC ("EMC"), and JPMorgan Chase & Co. ("JPMC") (collectively the "Defendants," and collectively with Plaintiffs, the "Parties") on behalf of a class of consumers who, from August 28, 2003 through March 29, 2013, have or have had an Option Adjustable Rate Mortgage Loan ("Loan" or "Option ARM Loan"), with certain characteristics, that was purchased or otherwise acquired by EMC on a flow basis, that was secured by real property in the State of California, and that was not originated by a federal savings association. Plaintiffs intend to seek final settlement approval at a hearing to be scheduled by the Court and, to that end, request preliminary approval of the proposed Settlement Agreement, approval of the proposed Individual Class Notice and Publication Notice, the setting of deadlines for Class Members to object and file exclusion requests, and the setting of a date for the Final Approval Hearing and for the hearing of Plaintiffs' motion for an award to Class Counsel for attorney's fees and costs and incentive payments to each of the Plaintiffs for their services in this action.

### II.     SUMMARY OF THE CASE

This action concerns alleged material nondisclosures in the loan documents for Option ARM Loans that were purchased or otherwise acquired by EMC.

Plaintiffs filed their initial action on August 28, 2007, case number CV-07-3454 ("the prior case") against BSRMC and BS&Co. (the "Defendants in the prior case"). Plaintiffs thereafter filed their First Amended Complaint, and Defendants

1

1   in the prior case filed motions to partially dismiss and to strike portions of

2   Plaintiffs' First Amended Complaint. On January 28, 2008, the Court issued an

3   Order granting in part and denying in part the motions. The Court also granted

4   Plaintiffs leave to amend and Plaintiffs filed their Third Amended Complaint on

5   February 26, 2008. Defendants in the prior case answered the Third Amended

6   Complaint on March 19, 2008. Plaintiffs and Defendants in the prior case entered

7   into a stipulation that Plaintiffs' claims were tolled until July 29, 2009, and on

8   February 5, 2009, the Court entered an order dismissing the prior case without

9   prejudice pursuant to stipulation.  Declaration of Jeffrey K. Berns filed

10  concurrently with this Motion ("Berns Decl."), ¶2.

11      Plaintiffs filed this case on July 24, 2009 (the "Action") against The Bear

12  Stearns Companies, Inc., BSRMC, BS&Co., EMC, and JPMC. Because it was

13  related to the prior case, it was transferred to this Court on August 12, 2009

14  pursuant to General Order 08-05.  Berns Decl., ¶3.

15      After several rounds of pleadings and motions practice, Plaintiffs filed the

16  operative Third Amended Class Action Complaint on October 6, 2011

17  ("Complaint") (Dkt. 185) alleging claims against some or all of the Defendants for

18  fraudulent omissions, violations of the UCL and TILA, breach of contract, and

19  breach of the implied covenant of good faith and fair dealing. Berns Decl., ¶4.

20      On March 2, 2012, Plaintiffs filed a motion to certify a class to pursue the

21  UCL claim against all Defendants and a BSRMC Subclass to pursue the contract

22  and TILA claims (the "Class Certification Motion"). Dkt. 212, as corrected by

23  stipulation on March 14, 2012, Dkt. 222. On September 26, 2012, the Court

24  granted the Class Certification Motion with respect to the Class's UCL claim and

25  the BSRMC Subclass's TILA claim, but denied without prejudice Plaintiffs'

26  motion for class certification with respect to the BSRMC Subclass claim for

27

28

2

breach of contract (the "Class Certification Order"). Dkt. 260. The Court also appointed Berns Weiss LLP, Williams Cuker Berezofsky, Spiro Moore LLP, and Arbogast Bowen LLP as Class Counsel.  Pursuant to the Class Certification Order, the Class and Subclasses are defined as follows:

**Class:**

All individuals who, from August 28, 2003 through March 29, 2013, have or had an Option ARM Loan that was purchased or otherwise acquired by EMC Mortgage Corporation, which was secured by real property in the State of California and not originated by a federal savings association. The *Monaco* Class is defined to include only those loans that had the following characteristics: (i) the "Interest Rate" paragraph of the Note (¶ 2) states both (1) a "yearly" Interest Rate that is less than the index plus the margin; and (2) that the Interest Rate "may" rather than "will" change; (ii) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; (iii) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" "will" result in negative amortization or deferred interest. Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America, and borrowers who fall within the foregoing class definition whose loans were originated by Lending 1st Mortgage before being acquired by EMC, as those loans are part of the certified class in *Plascencia v. Lending 1st Mortg., et al.,* Case No. C-07-4485 CW (N.D. Cal.).

**BSRMC Subclass:**

All members of the Class whose loans were originated by BSRMC.

**BSRMC TILA Subclass:**

All members of the Class whose loans were originated on or after August 28, 2006 by defendant BSRMC.

On October 10, 2012, Defendants filed with the U.S. Court of Appeals for the Ninth Circuit a petition for permission to appeal the Court's September 27, 2012 Class Certification Order pursuant to Fed. R. Civ. P. 23(f), which was denied on December 14, 2012. Dkt. 289. Berns Decl., ¶5.

On October 15, 2012, Plaintiffs filed a renewed motion to certify a BSRMC Breach of Contract Subclass (Dkt. 261), which was denied on December 10, 2012 (Dkt. 285). Berns Decl., ¶6.

3

After the Court granted approval of the Parties' Stipulation Regarding Agreed Form of Class Notice on February 27, 2013, (Dkt. 297), Class Notice was mailed on March 29, 2013.  A total of 5,134 Class Notices were initially mailed to 5,048 Class Members (certain members had more than one potential mailing address). Of those 5,134 notices, 885 were returned as undeliverable, representing 827 unique Class Members. An address search was performed for those returned notices, and 705 new addresses were identified. Accordingly, 705 Class Notices were re-mailed to those new addresses, and 53 of those notices were returned as undeliverable a second time. There were 3 exclusion requests. Berns Decl., ¶7.

On March 25, 2013, Plaintiffs filed a Motion for Partial Judgment on the Pleadings seeking judgment as to certain of Defendants' affirmative defenses to the Complaint. Dkt. 300. On April 1, 2013, BSRMC and JPMC moved for partial summary judgment (Dkt. 304), EMC and BS&Co. moved for summary judgment (Dkt. 305), and Plaintiffs moved for partial summary judgment (Dkt. 306). On April 8, 2013, Defendants moved to decertify the UCL class claims. Dkt. 319. Berns Decl., ¶8.

On April 24, 2013, the Court granted in part and denied in part Plaintiffs' motion for partial judgment on the pleadings, dismissing Defendants' Tenth, Eleventh, Fourteenth, Forty-Sixth, and Fiftieth Defenses, and limiting applicability as to Defendants' Fourth, Fifth, and Twenty-Fifth Defenses. Dkt. 359. Berns Decl., ¶9.

The Parties engaged in extensive discovery throughout the course of this litigation and are fully informed of the facts that support or undermine their respective positions.  From July 2009 to the present, Plaintiffs served several sets of written discovery on Defendants, including five sets of requests for production of documents on BSRMC, BS&Co., and JPMC, six sets of requests for production

of documents on EMC, ***resulting in the production of nearly 3 million pages of documents***, including extensive spreadsheets containing thousands of rows of data on loans by class members, all of which had to be reviewed. Plaintiffs also responded to three sets of interrogatories and requests for production of documents. Berns Decl., ¶10.

In addition to written discovery, significant deposition discovery took place. Plaintiffs were each deposed by Defendants.  Plaintiffs in turn twice deposed Defendants' corporate designees, Mary Haggerty, as well as deposed five individuals (Tom Marano, Sandy McGowan, Jeff Verschleiser, Megan Fay, and Michael Nierenberg) who were identified by Ms. Haggerty as having relevant knowledge on topics identified in Plaintiffs' Notice of Deposition of Corporate Designee.  Plaintiffs also took the deposition of Defendants' expert witness, Joffrey G. Long.  Additionally, Plaintiffs and Defendants took the depositions of three non-party witnesses (Steven Tirella, Steven Espinoza, and David Alimi). Berns Decl., ¶11.

Plaintiffs retained two expert witnesses -- Neil Fligstein, who provided a report on Defendants' organizational structure in originating, securitizing, and selling Option ARM Loans and mortgage-backed securities, and Greg J. Regan, who provided three reports on the negative amortization experienced by class members.  Berns Decl., ¶12.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   Settlement Negotiations

At all times, the Parties' settlement negotiations were adversarial, non-collusive, and at arms' length.  As discussed above, prior to and during these negotiations, the Parties engaged in vigorous, and often contentious, litigation. Berns Decl., ¶¶2-12.  In December 2011, the Parties participated in a mediation

session before the Hon. Edward A. Infante, which did not result in a settlement. On May 22, 2013, the Parties participated in mediation in Philadelphia, Pennsylvania before the Hon. Diane M. Welsh (Ret.) of JAMS, and continued having settlement discussions thereafter with Judge Welsh's assistance. Ultimately, an agreement in principal, which is now embodied in the Settlement Agreement, was reached.  Berns Decl., ¶13.

**B.      The Terms of the Proposed Settlement Agreement**

**1.      Settlement Payments**

Pursuant to the Settlement Agreement, Defendants are to pay a total of $18,300,000.00 (the "Settlement Fund") for payments to Class Members who are not Successful Opt-Outs, the payments to TILA Subclass Members, the Incentive Payments to Plaintiffs, if any, the Attorneys' Fees and Costs Award, if any, and for all Settlement Administration Costs.  Settlement Agreement, §§ 1.24, 1.28, 2.2.  Within 5 days after entry of the Preliminary Approval Order, Defendants will disburse $37,500.00 of the Settlement Fund to the Settlement Administrator for Settlement Administration Costs associated with providing the Class with notice of the Settlement. Settlement Agreement, § 4.5.  Upon Final Approval, an additional $37,500 from the Settlement Fund will be available for further Settlement Administration Costs.  The Settlement Administrator has agreed to a $75,000 cap for all Settlement Administration Costs. Settlement Agreement, § 4.1.

Every Class Member who does not opt-out of the Settlement, and for whom a valid address can be located through the exercise of due diligence, will be entitled to a cash payment based on a Payment Schedule. In order for settlement payments to be related to the amount of negative amortization (the primary source of restitution sought by Class Members) incurred by Class Members, the Payment Schedule contains payment amounts that range from $505-$5,469, depending

upon the original principal amount of the Loan and the time period for which the Class Member made regular monthly payments on account of the Loan. The Payment Schedule provides a conservative estimate of Class Member payout, based on the assumptions that: (a) there are no Successful Opt-Outs; (b) the Settlement Administrator and/or Class Counsel are able to identify a current address for each Class Member; (c) the Settlement Administration Costs will reach the full $75,000 cap; (d) the Court awards the entire amount of attorneys' fees and costs and incentive awards sought by Plaintiffs and Class Counsel; (e) the portion of the Settlement Amount available for the TILA Subclass Settlement Fund will be $500,000; and (f) the resulting portion of the Settlement Amount available for distribution of the Settlement Checks to Class Members will be approximately Twelve Million Two Hundred Twenty Thousand Dollars ($12,220,000).  However, in order to insure that Class Members receive Settlement payments based on the entire portion of the Settlement Fund that remains after the payment of the TILA Subclass Settlement Fund, administration costs, attorneys' fees and expenses, and the incentive payments, the amounts on the Payment Schedule will be increased, as needed, on a pro rata basis. Settlement Agreement, § 12.1; Ex. E.

In addition to the payment discussed above, each TILA Subclass Member will receive a share of a $500,000 TILA Subclass Settlement Fund, which will be paid from the Settlement Fund, and which will be divided equally among all TILA Subclass Members. Settlement Agreement, § 12.3.

Within 5 business days of the Final Approval Date, as defined in paragraphs 1.8 and 1.10 of the Settlement Agreement, Defendants shall tender the Settlement Fund to the Settlement Administrator, less any amounts previously tendered to the

1    Settlement Administrator for Settlement Administration Costs.  Settlement

2    Agreement, § 2.1.

3            Within 30 business days after the Final Approval Date, the Settlement

4    Administrator is to mail a Settlement Check, in an amount no less than that

5    identified in the Payment Schedule, to each Class Member who is not a Successful

6    Opt-Out and for whom a valid address can be located through the exercise of due

7    diligence.  For TILA Subclass Members, the Settlement Check shall also include

8    an equal distribution of the TILA Subclass Settlement Fund. Settlement

9    Agreement, § 12.1.

10                  **2.    Attorneys' Fees and Costs Award**

11           Class Counsel will file a motion requesting the Court's approval of

12   reasonable compensation for Class Counsel's services and for costs and expenses

13   of up to 30%, which is slightly above the 25% benchmark in the Ninth Circuit

14   (*see, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)), of the

15   Settlement Fund relating to the prosecution of the claims of the Plaintiffs, Class

16   Members, and TILA Subclass Members against Defendants in the Action (the

17   "Attorneys' Fees and Costs Award") at least 14 days before the proposed deadline

18   for the filing of Objections to the Settlement set by the Court. Settlement

19   Agreement, § 3.1. Such an award is supported by existing precedent. *See, e.g., In*

20   *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming

21   award of attorneys' fees equal to 33 1/3% of the fund); *In re Activision Sec. Litig.*,

22   723 F. Supp. 1373 (N.D. Cal. 1989) (awarding fees equivalent to 32.8% of the

23   settlement fund). Defendants have agreed not to file a written opposition to such

24   application. Settlement Agreement, § 3.3.  Subject to the Court's approval, within

25   5 business days after the Final Approval Date, the Settlement Administrator shall

26

27

28

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)

1  pay the Attorneys' Fees and Costs Award ordered by the Court from the

2  Settlement Fund. Settlement Agreement, § 3.4.

3         **3.     Incentive Payments**

4         The Plaintiffs may apply to the Court for an incentive payment to

5  compensate them based on legally appropriate factors, which may, in the Court's

6  discretion, include: (1) the time and effort undertaken by the Plaintiffs in pursuing

7  this Litigation, (2) the risks undertaken by the Plaintiffs, including the risk of

8  liability for the Parties' costs of suit, and (3) any notoriety or personal difficulties

9  encountered by the Plaintiffs as a result of the Litigation (the "Incentive

10 Payment").  The Court shall have sole discretion as to whether to award an

11 Incentive Payment to each of the Plaintiffs and, if so, in what amount.  Plaintiffs

12 understand that they may receive no Incentive Payment and have affirmed that

13 their agreement to the Settlement is not conditioned on the possibility of receiving

14 an Incentive Payment.  Defendants have agreed not to oppose, or cause to be

15 opposed such application for up to $5,000 per Plaintiff.  Settlement Agreement,

16 § 3.5.  Subject to the Court's approval, within 5 business days after the Final

17 Approval Date, the Settlement Administrator shall pay the Incentive Payments

18 ordered by the Court from the Settlement Fund.  Settlement Agreement, § 3.6.

19        **4.     Release By Class Members**

20        Upon Final Approval, as defined in the Settlement Agreement, the Class

21 will have released the "Released Parties" from the "Released Rights," all as

22 defined in the Settlement Agreement, including a waiver of Civil Code § 1542.

23 Settlement Agreement, §§ 9.1, 9.2.

24        **5.     Notice**

25        Class Members will be notified of the proposed Settlement terms as

26 follows: (a) by having the Settlement Administrator mail, within 21 days after

27

28

9

receipt of the Preliminary Approval Order, the Individual Class Notice to each member of the Class who has not already requested exclusion from the Action; and (b) by publishing a Publication Notice in a non-classified section of *USA Today* for two consecutive days.  Settlement Agreement, §§ 6.5, 6.7.  Additionally, a dedicated web site (www.optionarmclass.com) will be established that will provide links to the Individual Class Notice, the Settlement Agreement, this Motion for Preliminary Approval, and the Preliminary Approval Order, as well as the Motion for Attorneys' Fees and Costs after it is filed.  Settlement Agreement, § 4.2.  All of the costs associated with the notice program will be paid from the Settlement Fund.  Settlement Agreement, § 6.8.

Additionally, the Settlement Agreement provides for significant efforts to locate Class Members who no longer have their Loans, and for whom Defendants, or their affiliates, may not possess a current address.  The Settlement Administrator already has a list containing address information for all of the Class Members provided by Defendants, which it updated through the procedures set forth in the Stipulation Regarding Agreed Form of Class Notice approved by the Court on February 27, 2013.  Settlement Agreement, § 6.2.  Defendants are to provide the Settlement Administrator with a list containing any updated address information for Class Members, obtained since providing the address information for the Notice of Pendency of the Action, to the Settlement Administrator.  Settlement Agreement, § 6.3.  Prior to sending out the Individual Class Notice, the Settlement Administrator will obtain further updated addresses for Class Members by using (a) information reasonably available from a Lexis-Nexis persons search performed as to each Class Member, (b) information reasonably available from the National Change of Address ("NCOA") database maintained by the United States Postal Service ("Postal Service"), and (c) such additional efforts as the

10

Settlement Administrator reasonably believes are appropriate to identify updated addresses, if any, for each Class Member.  Settlement Agreement, § 6.4.  If an Individual Class Notice is returned by the Postal Service as undeliverable but with a forwarding address, the Settlement Administrator will re-mail the Individual Class Notice to the forwarding address within 10 days.  Settlement Agreement, § 6.6.

### 6.    Final Approval Hearing

At a date set by the Court, the Settlement contemplates that the Court will hold a hearing and, if the Settlement is approved, enter a Final Approval Order (in the form attached to the Settlement Agreement as Exhibit D) approving the Settlement in a manner substantially consistent with the terms and intent of the Settlement Agreement, and dismissing all claims against Defendants with prejudice.  Settlement Agreement, §§ 11.1-11.8.

### C.    The Proposed Implementation Schedule

The schedule below, taken from the Settlement Agreement, sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the proposed Settlement Agreement.

| | |
|---|---|
| Defendants to serve CAFA notice of the Settlement upon appropriate officials (28 U.S.C. § 1715). Settlement Agreement, § 6.9. | Within 10 days of the filing of the proposed Settlement Agreement |
| Defendants to disburse $37,500 to be used by Settlement Administrator for administration costs. Settlement Agreement, § 4.5. | within 5 days after entry of the Preliminary Approval Order |
| Defendants to provide list of updated address information to the Settlement Administrator. Settlement Agreement, § 6.3. | within 7 business days after entry of the Preliminary Approval Order |
| Settlement Administrator to cause a copy of the Individual Class Notice, the Settlement Agreement, this Motion for Preliminary Approval, and the Preliminary Approval Order to be made available on | within 14 days after entry of the Preliminary Approval Order |

11

| | |
|---|---|
| the website, BearStearnsOAClass.com.  Settlement Agreement, § 4.2. | |
| Settlement Administrator to mail Individual Class Notice to each Class Member.  Settlement Agreement, § 6.5. | within 21 days after receipt of the Preliminary Approval Order |
| Settlement Administrator to cause the Publication Notice to be published in a non-classified section of *USA Today* for 2 consecutive days.  Settlement Agreement, § 6.7. | within 21 days after receipt of the Preliminary Approval Order |
| Plaintiffs and Class Counsel to make Motion for Attorneys' Fees and Costs, and for Incentive Payments.<br>Settlement Agreement, §§ 3.1, 3.5, 11.3. | At least 14 days before Objections deadline |
| Deadline for Class Members to submit exclusion requests.  Settlement Agreement, § 7.1. | within 45 days from the date of the Individual Class Notice |
| Class Members to submit a written objection to the Settlement.  Settlement Agreement, § 8.1. | within 45 days from the date of the Individual Class Notice |
| Plaintiffs and Class Counsel to move for entry of a Final Approval Order.  Settlement Agreement, § 11.4. | at least 35 days before the Final Approval Hearing (or no later than 45 days after the date of the Individual Class Notice) |
| Settlement Administrator to provide Class Counsel and Defendants' Counsel with list of persons who submitted Requests for Exclusion.  Settlement Agreement, § 7.4. | no later than 60 days after the date of the Individual Class Notice |
| Class Counsel and Defendants' Counsel to file a response to any Objections.  Settlement Agreement, §§ 8.2, 11.5. | at least 14 days before the Final Approval Hearing (or no later than 66 days after the date of the Individual Class Notice) |
| Settlement Administrator to provide Class Counsel with a declaration identifying all persons who made a timely and valid Request for Exclusion, which Class Counsel shall file with the Court.  Settlement Agreement, § 7.5. | at least 14 days before the Final Approval Hearing (or no later than 66 days after the date of the Individual Class Notice) |
| Settlement Administrator to file a declaration | at least 14 days before the |

12

| | |
|---|---|
| stating that any required Notice has been provided in accordance with the terms of the Preliminary Approval Order.  Settlement Agreement, §11.2 | Final Approval Hearing (or no later than 66 days after the date of the Individual Class Notice) |
| Final Approval Hearing.  Settlement Agreement, § 11.1. | No sooner than 80 days after the date of the Individual Class Notice |
| Settlement Administrator to provide final calculation of Settlement Administration Costs and an updated Payment Schedule.  Settlement Agreement, § 12.1. | within 2 business days of the Final Approval Date |
| Defendants to tender Settlement Fund to the Settlement Administrator, less any amounts previously tendered for administration costs. Settlement Agreement, § 2.1. | within 5 business days of the Final Approval Date |
| Settlement Administrator to pay any Attorneys' Fees and Costs Award ordered by the Court. Settlement Agreement, § 3.4. | within 5 business days after Final Approval Date |
| Settlement Administrator to pay any Incentive Payments ordered by the Court.  Settlement Agreement, § 3.6. | within 5 business days after Final Approval Date |
| Settlement Administrator to mail Settlement Checks, which will become void in 180 days. Settlement Agreement, §§ 12.1, 12.6. | within 30 days after Final Approval Date |
| Settlement Administrator to send reminder letter to Class Members who have not cashed checks. Settlement Agreement, § 12.7. | 60 days after issuance of Settlement Check |
| If the amount of uncashed checks and returned checks is at least $50,000, then the Settlement Administrator shall distribute such balance, less administration costs, to all Class Members who cashed their checks. If such balance is less than $50,000, then the balance shall become part of a cy pres fund to be distributed to a non-profit organization mutually agreed upon by the parties. Settlement Agreement, § 12.8. | 180 days after issuance of Settlement Check |

//

13

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)

## IV.   PRELIMINARY APPROVAL OF THE TERMS OF THE PROPOSED SETTLEMENT IS WARRANTED

Settlements of complex class actions prior to trial are strongly favored. *See*, *e.g.*, *Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[I]f the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing." *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009). The Ninth Circuit has repeatedly ruled that the courts "put a good deal of stock in [class settlements that are] the product of arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Hanlon,* 150 F.3d at 1027.

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. This "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

At the preliminary approval stage, a court must determine whether a proposed settlement is "within the range of possible approval" and whether notice should be sent to class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th

Cir. 1981); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").

Assessing a settlement proposal requires the district court to balance a number of factors, including but not limited to: ". . . the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026 (citation omitted). Other factors may include, *inter alia*: "the advantages of the proposed settlement versus the probable outcome," "the comparison of the results achieved for individual class or subclass members by the settlement or compromise and the results achieved or likely to be achieved for other claimants pressing similar claims," "the reasonableness of any provisions for attorney fees," "the fairness and reasonableness of the procedure for processing individual claims under the settlement," and "the apparent intrinsic fairness of the settlement terms." Manual for Complex Litigation (fourth) ("MCL 4th") § 21.62 (2004).

The fact that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon*, 150 F.3d at 1027. The district courts have "wide discretion in assessing the weight and applicability of each factor." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 526. The factors are non-exclusive and not all need be shown. *Churchill Village*, 361 F.3d at 576 n. 7. Indeed, "one factor alone may prove determinative in finding

1  sufficient grounds for court approval." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D.

2  at 525; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)

3  (upholding settlement where one factor (defendant's financial condition)

4  predominated). "Ultimately, the district court's determination is nothing more than

5  an 'amalgam of delicate balancing, gross approximations, and rough justice.'"

6  *Nat'l Rural Telecomm. Coop.,* 221 F.R.D. at 526 (citations omitted).  The

7  proposed Settlement with Defendants easily satisfies the standards for preliminary

8  approval.

9        **A.    The Settlement Terms are Fair, Reasonable, and Adequate, Within the Range of Reasonableness**

10       The proposed Settlement "taken as a whole," is fundamentally fair,

11  adequate, and reasonable. *Hanlon*, 150 F.3d at 1026. The Settlement is "fair" and

12  "reasonable" because each Class Member who is not a Successful Opt-Out will

13  receive payment in accordance with the Payment Schedule that will depend upon

14  the original principal balance of the Class Member's Loan and the length of time

15  during which the Class Member made payments on that Loan. Further, TILA

16  Subclass Members will receive an equal distribution from the TILA Subclass

17  Settlement Fund to resolve their TILA claims. The cash remedies directly and

18  proportionately address the alleged injury from Defendants' alleged failure to

19  disclose critical loan terms to borrowers in loan documents, including that the

20  subject Option ARM Loans were guaranteed to cause negative amortization even

21  if borrowers made the required payments. Thus, Class Members will receive a

22  refund of a portion of the negative amortization that they have paid or incurred.

23       The Settlement is "adequate" because this relief is no less valuable than the

24  economic relief Class Members might have obtained without using the class

25  action process, while avoiding the delay, risk and expense of further litigation.

26  There is thus little risk that the Settlement will create real prejudice to any

27

28  Motion for Preliminary Approval of Class Action Settlement
                   CASE NO. 2:09-cv-05438-SJO (JCx)

1  individual Class Member's rights.  Further, several of the balancing factors

2  discussed above weigh in favor of approval of the proposed Settlement

3  Agreement:

4      **1. Strength of Plaintiffs' case**: If this case continued to be litigated, the

5  risks concerning the contested factual and legal issues of liability, and the

6  restitution available, under the UCL stemming from the alleged nondisclosures

7  would be extensive, as Defendants have filed a summary judgment motion

8  concerning all of these, and other, issues, which was fully briefed when the parties

9  agreed to the Settlement.  Further, although the Court has granted Plaintiffs' Class

10  Certification Motion, Defendants continue to dispute that result and had moved

11  for decertification. Approval of a settlement is proper where "the settlement terms

12  compare favorably to the uncertainties associated with continued litigation

13  regarding the contested issues in this case [including where] . . . the Settlement

14  provides Class Members with a meaningful business resolution regarding

15  contested issues." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 526.

16      **2. Risk, expense, complexity, and likely duration of further litigation**:

17  "In most situations, unless the settlement is clearly inadequate, its acceptance and

18  approval are preferable to lengthy and expensive litigation with uncertain results."

19  *Id*. (citations omitted).  The proposed Settlement Agreement is not "clearly

20  inadequate," given that it provides for a Settlement Fund of $18,300,000.  Further,

21  Class Counsel believes that Plaintiffs have a meritorious case.  Class Counsel,

22  however, is also aware that there are several heavily disputed legal and factual

23  issues concerning liability and restitution under the UCL on which Plaintiffs

24  would have to prevail in order to win if they defeated summary judgment and

25  there was a trial.  Berns Decl. ¶22.

26

27

28

17

**3. The amount offered in settlement**: "In assessing the consideration obtained by the class members in a class action settlement, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'  In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. (citations omitted).  The proposed Settlement Agreement, taken as a whole, is fair, as discussed above.

**4. The experience and views of counsel**: "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'  Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Id*. (citations omitted).

Here, in pursuing this action aggressively for over four years through the briefing of summary judgment motions, and many other similar actions, Class Counsel have demonstrated a high degree of competence in the litigation of this case, and strongly believe that the Settlement is a fair, adequate, and reasonable resolution of the Class's and Subclasses' disputes with Defendants and is preferable to continued litigation.  Berns Decl., ¶¶23-24.  *See also In re Wachovia Corp. "Pick-A-Payment" Mortgage Mktg. & Sales Practices Litig.*, 5:09-MD-02015-JF, 2011 WL 1877630, at *3 (N.D. Cal. May 17, 2011) (Fogel, J.) (approving settlement based upon, among other factors, the belief of "Plaintiffs' counsel, who are experienced attorneys . . . that the settlement is extremely favorable to the class").  There was no  fraud or collusion in the settlement

negotiations, which were conducted at arm's-length, before Hon. Diane M. Welsh (Ret.) of JAMS.  Berns Decl., ¶¶21, 23. Accordingly, Plaintiffs respectfully request that the proposed Settlement Agreement be preliminarily approved.

### B.   The Court Should Order Dissemination Of The Proposed Notices

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and he heard at the fairness hearing.  3 *Newberg on Class Actions* § 8:32 (4th ed.).  The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2) and (e)(4).

Here, Plaintiffs request approval of the proposed direct Individual Class Notice by U.S. Mail and Publication Notice. The Individual Class Notice and Publication Notice meet all of the requirements of Rule 23(e): they identify the Plaintiffs and Defendants and describe the lawsuit and the Class and Subclasses in a straightforward manner; succinctly describe the essential terms of the proposed Settlement, and identify all parties against whom claims are being released; provide Class Members with information on how to opt-out of the Class, or object to the Settlement and provide all applicable deadlines for such action; and inform Class Members that if they do not exclude themselves from the Class, and the Settlement is approved, they will be bound by the resulting judgment. Settlement Agreement, Exs. A, B. In addition, the Notices instruct Class Members to contact

19

Class Counsel to obtain more detailed information and provide information regarding counsel's fee and expense application. *Id.* In short, the Individual Class Notice and Publication Notice will provide the necessary information for Class Members to make an informed decision regarding the proposed Settlement.

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 177 (1974), and "is appropriate, for example, if class members are required to take action—such as filing claims—to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)." *See* Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments, Subdivision (e)). As courts have repeatedly held, notice by direct mail or e-mail and publication are often the "best practicable" notice under the circumstances. *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994); *Browning v. Yahoo! Inc.,* No. C04-01463 HRL, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007); *In re TD Ameritrade Account Holder Litig.*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226, at *10 (N.D. Cal. Sept. 13, 2011).

Here, the proposed Settlement provides for direct mail notice of settlement to each borrower who had not previously opted-out, bolstered by publication of a notice in *USA Today* for two consecutive days announcing the Settlement, and a dedicated internet site with expansive information. Settlement Agreement, §§ 4.2, 6.5, 6.7. As the proposed Settlement Administrator disseminated the notice of class certification earlier this year, it already possesses a list of Class Members. As discussed above, prior to sending out the Individual Class Notice, Defendants will provide the Settlement Administrator with updated addresses that are in their possession and the Settlement Administrator will further obtain updated addresses

1   by using information from Lexis-Nexis persons searches and from the NCOA

2   database. Settlement Agreement, § 6.3. The comprehensive notice program here

3   more than sufficiently satisfies all due process requirements. *See, e.g., Perry v.*

4   *FleetBoston Financial Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2003) (direct mail

5   notice to credit card holders with one-day advertisement in *USA Today* is best

6   practicable notice)*; In re Compact Disc Minimum Advertised Price Antitrust*

7   *Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) (individual mailed notice normally

8   constitutes best practicable notice). *See also In re Wachovia Corp.*, 2011 WL

9   1877630, at *3 (concluding that a similar plan of notice "was adequate and

10  satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due

11  process").

12         **C.      The $5,000 Incentive Payments to Each Plaintiff Are Reasonable**

13         Class representatives "are eligible for reasonable incentive payments," after

14  consideration of relevant factors, including the actions the representative has taken

15  to protect the interests of the class and the degree to which the class has benefited

16  from those actions.  *Staton*, 327 F.3d at 977.  Plaintiffs, who have worked with

17  their counsel for over 4 years, provided document discovery and were each

18  deposed in this action, should be rewarded for taking the initiative to file the

19  action, and for their roles in reaching a substantial Settlement providing for

20  valuable relief to the Class.  Berns Decl., ¶18.  Indeed, the Ninth Circuit has

21  approved service payments to class representatives that far exceed the modest

22  awards proposed to be distributed Plaintiffs.  *Id*. at 976-77.  *See also In re*

23  *Wachovia Corp.*, 2011 WL 1877630, at *7 (approving service payments ranging

24  between $2,500 and $14,250 per named Plaintiffs "in compensation for

25

26

27

28

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)

shouldering significant burdens during the litigation: retaining counsel, producing documents, responding to written discovery, and conferring with counsel").[3]

## V.   A FINAL APPROVAL HEARING SHOULD BE SET, ALONG WITH EXCLUSION, OBJECTION, AND MOTION DEADLINES

"Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." MCL 4th § 21.633, at 321. Pursuant to the Settlement Agreement, the Parties request that the Court set a date for the Final Approval Hearing, deadlines for any motions to be submitted to the Court, including a Motion for Final Approval of the Settlement and a Motion for Attorneys' Fees and Costs and Incentive Payments, and deadlines for Class Members to submit their exclusion requests and objections.

In order to enable sufficient time for the Parties and the Settlement Administrator to mail the Individual Class Notice, to publish the Publication Notice in *USA Today*, and to place documents on the dedicated settlement website, for Class Members to submit their requests for exclusion or objections, and for the Parties to respond to any objections, Plaintiffs request that the date for the Final Approval Hearing to consider final approval of the Settlement, the Attorneys' Fees and Costs Award, and Incentive Payments be set at least 80 days from the date of the deadline for mailing the Individual Class Notice.

## VI.   THE COURT SHOULD APPOINT KURTZMAN CARSON CONSULTANTS LLC AS SETTLEMENT ADMINISTRATOR

Plaintiffs and Class Counsel have retained Kurtzman Carson Consultants LLC ("KCC") to act as Settlement Administrator. As the Court has already found

---

[3] Plaintiffs and Class Counsel will file a written application for an Attorneys' Fees and Costs Award pursuant to the terms of the Settlement Agreement 14 days prior to the Objections deadline.

1   in approving KCC as the administrator to disseminate the Class Notice earlier this

2   year, KCC has experience administering nearly 1,500 settlements and providing

3   services, including class member data management, establishment of toll free

4   phone lines to handle class member inquiries, translation services for class notice,

5   distribution of class notice with the U.S. Postal Service, website hosting and

6   management, and preparation of reports to courts describing notice and claims

7   administration activities. Additionally, given that it was responsible for mailing

8   the Class Notice, KCC is already in possession of a list of all Class Members'

9   addresses, which it has updated through the procedures set forth in the Stipulation

10  Regarding Agreed Form of Class Notice approved by the Court on February 27,

11  2013. As such, KCC has the requisite experience to act as Settlement

12  Administrator in this case.

13  **VII.  CONCLUSION**

14          For all the foregoing reasons, Plaintiffs respectfully request that the Court

15  enter an Order in the form lodged herewith: (1) preliminarily approving the

16  Settlement memorialized in the Settlement Agreement as fair, reasonable, and

17  adequate, including the material terms of the Settlement; (2) setting a date for the

18  Final Approval Hearing; (3) appointing Kurtzman Carson Consultants LLC as

19  Settlement Administrator; (4) approving the proposed Individual Class Notice in

20  the form attached as Exhibit A to the Settlement Agreement and authorizing its

21  dissemination to the Class; (5) approving the Publication Notice in the form

22  attached as Exhibit B and authorizing its publication pursuant to the terms of the

23  Settlement Agreement; (6) setting deadlines consistent with the Settlement

24  Agreement for mailing of the Individual Class Notice, publication of the

25  Publication Notice, the filing of objections, the submission of requests for

26  exclusion from the class, and the filing of papers in connection with the Final

27

28

1   Approval Hearing; and (7) prohibiting and preliminarily enjoining the Plaintiffs,

2   all Class Members (excepting those who are Successful Opt-Outs), Class Counsel,

3   and Plaintiffs' Counsel from commencing, prosecuting, or assisting in any lawsuit

4   against the Released Parties that asserts or purports to assert matters within the

5   scope of the Release during the time between entry of the Preliminary Approval

6   Order and final determination by the Court regarding whether to finally approve

7   the Settlement in this Action.

8

9   Dated:  August 30, 2013                    Respectfully submitted,

10                                                           **BERNS WEISS LLP**

11                                                           By:   /s/ Jeffrey K. Berns
                                                             Jeffrey K. Berns
12                                                           20700 Ventura Blvd., Suite 140
                                                             Woodland Hills, CA 91364
13                                                           Tel.:  (818) 961-2000
                                                             Fax:  (818) 999-1500

14                                                                      – and –

15                                                            Lee A. Weiss (admitted *pro hac vice*)
                                                             585 Stewart Avenue, Suite L-20
16                                                           Garden City, New York 11530
                                                             Tel.:  (516) 222-2900
17                                                            Fax:  (818) 999-1500

18                                                           **SPIRO MOORE LLP**
                                                             J. Mark Moore
19                                                           11377 W. Olympic Boulevard, Fifth Floor
                                                             Los Angeles, California 90064-1683
20                                                           Tel.:  (310) 235-2468
                                                             Fax:  (310) 235-2456

21
                                                             **WILLIAMS CUKER BEREZOFSKY**
22                                                           Mark R. Cuker (admitted *pro hac vice*)
                                                             Michael J. Quirk (admitted *pro hac vice*)
23                                                           1515 Market Street, Suite 1300
                                                             Philadelphia, PA 19103-1819
24                                                           Tel.:  (215) 557-0099
                                                             Fax:  (215) 557-0673

25
                                                             **ARBOGAST BOWEN LLP**
26                                                           David M. Arbogast
                                                             Chumahan B. Bowen
27
                                                                                24
28   _____
     Motion for Preliminary Approval of Class Action Settlement
                                   CASE NO. 2:09-cv-05438-SJO (JCx)

11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.:  (310) 477-7200
Fax:  (310) 943-2309

*Attorneys for Plaintiffs, the Certified Class,
and the Certified BSRMC and TILA
Subclasses*

25

Motion for Preliminary Approval of Class Action Settlement
CASE NO. 2:09-cv-05438-SJO (JCx)